## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ALIU ALABI,

     Plaintiff,

v.                                   Civ. No. 24-493 GJF/KK

BROOKE L. ROLLINS, *Secretary,*
*U.S. Department of Agriculture,*[1]

     Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTIONS TO COMPEL

     *Pro se* Plaintiff Aliu Alabi, a Black Nigerian employee with a disability, alleges that the Secretary of the United States Department of Agriculture retaliated and discriminated against him in violation of Title VII, the Rehabilitation Act, and the Americans with Disabilities Act. (Doc. 5.) Now before the Court is Plaintiff's Motion to Compel (Doc. 52) ("Motion") and "Motion to Compel Discovery and Court to Make Decision on Docs 52, 59, 62" (Doc. 66) ("Motion for Sanctions"). Having reviewed the parties' submissions, the record, and the relevant law, the Court GRANTS Plaintiff's motions in part, and DENIES them in part, as follows.

## I.   BACKGROUND

     At all relevant times, Plaintiff was a GS-11 employee on the United States Forest Service's Albuquerque Service Center ("ASC") Service Team. (Doc. 5 at ¶ 65.) Plaintiff filed discrimination and retaliation claims with the Equal Employment Opportunity Commission ("EEOC") in 2018 and 2019. (*Id.* at 6.) After administrative proceedings, the EEOC issued Plaintiff a right to sue

---

[1] Brooke L. Rollins was sworn in as the Secretary of the United States Department of Agriculture on February 13, 2025, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d).

letter on April 8, 2024. (*Id.* at ¶ 7; Doc. 2, Ex. 8.)[2] Plaintiff filed the Complaint in this case on May 20, 2024. (Doc. 2.) He then filed a seven-count First Amended Complaint (Doc. 5) ("FAC") on May 22, 2024.

In his FAC, Plaintiff alleges that Defendant discriminated[3] and retaliated against him for prior EEOC complaints when his supervisors Jonna Anderson and Emily Bergener gave him lower ratings than similarly situated employees on the ASC Service Team during the Fiscal Year 2019 ("FY 19") performance appraisal process. (Doc. 5 at ¶¶ 54-126, ¶¶ 240-68.) Plaintiff identifies six comparators (Jessica Varela, Kym Parsons, Christopher Huntsman, Leandro Ortiz, Elizabeth Walters, and Somsakul Birdsong, collectively "the comparators") who received higher FY 19 performance appraisal ratings than he did. (Doc. 5 ¶¶ 75-78, 105.) Plaintiff alleges that the comparators had not filed previous EEOC complaints (*id.* at ¶ 201), were not black (*id.* at ¶ 242), did not have an "African accent" (*id.* at ¶ 256), and were not disabled (*id.* at 263.) Plaintiff alleges that his lower ratings made him ineligible for promotions and awards, including greater monetary compensation, for which the comparators were eligible. (*Id.* at ¶¶ 17, 61, 63, 74, 105-107, 122, 244-248.)

Plaintiff also brings discrimination claims on the grounds that he was passed over for two GS-12 Human Resources Specialist positions in favor of less qualified candidates. Specifically, Plaintiff claims that, in November 2018, Melissa Dittman selected, and Erica Nieto approved the selection of, a lesser qualified, non-Black applicant (Lisa Salazar) rather than selecting him for a GS-12 position. (*Id.* at ¶¶ 226-239.) And in September 2019, Plaintiff claims that Defendant hired

---

[2] The claims decided by the EEOC mirror the claims in the FAC. (Doc. 2, Ex. 8.)

[3] In addition to race, national origin, and disability discrimination, the Plaintiff mentions age as one of the bases for discrimination in the FAC, but he articulates no specific factual allegations supporting age discrimination. (Doc. 5.)

or promoted two less qualified applicants (Jennifer Robinson and Mario Gonzales), who were not Black, Nigerian, or disabled, for a GS-12 position focused on policy. (*Id.* at ¶¶ 204-209, 213.)

On October 14, 2024, Plaintiff served Defendant with a set of twenty-two interrogatories, twenty-three requests for production, and twenty-nine requests for admission. (Doc. 52 at 23-61; *see* Doc. 21 at 1.) On December 13, 2024, Defendant served her responses to Plaintiff's discovery requests, in which she objected to all interrogatories and requests for production as well as Requests for Admission ("RFA") Nos. 1, 2, 8, 17, 19, 20, and 26-28. (Doc. 52 at 65-105; *see* Doc. 31 at 1.) After the parties conferred, Defendant agreed to supplement her responses to RFAs Nos. 1, 19, and 20, but otherwise stood on her objections. (Docs. 59-1, 59-2, 59-3.) On January 5, 2025, Plaintiff served Defendant with Interrogatories Nos. 23-25 and Requests for Production ("RFP") Nos. 24 and 25. (Doc. 52 at 62-64; *see* Doc. 37 at 1.) On January 29, 2025, Defendant served Plaintiff with responses objecting to each of these discovery requests. (Doc. 52 at 106-11; *see* Doc. 44 at 1.)

In the present Motion, Plaintiff asks the Court to compel Defendant to answer Interrogatories Nos. 1-25 and produce the documents requested in RFPs Nos. 1-3, 5, 12-14, and 20-25.[4] (Doc. 52 at 1-17.) Plaintiff further states in his Motion that he "quer[ies] the sufficiency of the Defendant['s] responses to [RFAs Nos.] 2, 3, 8-10, 14-19, [and 22-29]." (*Id.* at 17; *see id.* at 17-21.) On March 27, 2025, Defendant filed a response to Plaintiff's motion, and on April 3, 2025, Plaintiff filed a reply. (Docs. 59, 62.)

---

[4] Plaintiff does not make it explicitly clear that he only wishes to challenge Defendant's objections to these specific RFPs. (*See generally* Doc. 52.) However, Plaintiff's arguments are limited to Defendant's objections to these enumerated RFPs, (*see id.* at 12-17), and the Court therefore has no basis to grant Plaintiff's Motion as to any objections he does not address.

## II.    LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a material fact more or less probable. Fed. R. Evid. 401. Information "need not be admissible in evidence to be discoverable," Fed R. Civ. P. 26(b)(1), and discovery rules "are to be accorded a broad and liberal treatment." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Nevertheless, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Thus, the court "must limit the frequency or extent" of otherwise permissible discovery where:

(i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Further, in assessing whether the requested discovery is proportional to the needs of the case, "courts typically weigh one party's right to discovery against the other party's privacy interests" where a privacy interest is involved. *Vyanet Operating Grp., Inc. v. Maurice*, No. 21-cv-2085, 2023 WL 3791458, at *2 (D. Colo. June 2, 2023).

Federal Rule of Civil Procedure 33 governs interrogatories to parties. Under this rule, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Where the responding party objects, the grounds for

such objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Objections not timely made are waived. *Id.*

Federal Rule of Civil Procedure 34 governs requests for a party to produce documents, electronically stored information, and tangible things. Under this rule, requests for production should "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). In practice, this directive means that "a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court … to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (quoting Wright & Miller, 8A Fed. Practice & Procedure § 2211, at 415). A proper response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B).

Federal Rule of Civil Procedure 36 governs requests for admission. Rule 36(a)(1) states: "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: ... facts, the application of law to fact, or opinions about either[.]" Fed. R. Civ. P. 36(a)(1)(A). Absent court permission to withdraw or amend, admissions are binding on a party in the pending action. *See* Fed. R. Civ. P. 36(b). "The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5).

> The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.

Fed. R. Civ. P. 36(a)(6).

When a party improperly fails to respond to discovery requests, the requesting party may move to compel the other party to respond and for appropriate sanctions. Fed. R. Civ. P. 37(a)(3)(A). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 37 also allows a moving party, if successful, to recover expenses, including attorney fees. Fed. R. Civ. P. 37(a)(5)(A). However, the court may choose not to award attorney fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

## III.    ANALYSIS

### A.  Privacy Act Objections

In her objections to Plaintiff's discovery requests and her response to Plaintiff's Motion, Defendant asserts that Plaintiff is not entitled to discovery because he seeks information protected by the Privacy Act. (Doc. 52 at 65-105; Doc. 59 at 15-16). Specifically, Defendant argues that material sought in the requests is "personnel information generally protected from disclosure" by the Privacy Act. (Doc. 59 at 15.) Defendant further asserts that a protective order "may not be adequate in this case" because Plaintiff is "a *pro se* party who works in human resources in the same Agency as the other employees, has already filed numerous personal personnel documents of other employees, which contain, among other things, pay information, addresses, disability status, race, and email addresses." (Doc. 59 at 16.)

The Privacy Act is part of the Freedom of Information Act (the "FOIA"), which requires that federal agencies make government records available, subject to certain exemptions. 5 U.S.C.

§ 552; 5 U.S.C. § 552a. Among other things, the Privacy Act governs how government records that contain information about individuals may be released and contains a private right of action for individuals when an agency has improperly disclosed records. 5 U.S.C. § 552a(b).

Government agencies may release information protected by the Privacy Act under the "routine use" provision. 5 U.S.C. § 552a(b)(3); s*ee Pippinger v. Rubin*, 129 F.3d 519, 531-32 (10th Cir. 1997). The Privacy Act requires that federal agencies publish in the Federal Register a notice of "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D). In its notice, the Department of Agriculture identifies the following as a routine use:

> In an appropriate proceeding before a court, grand jury, or administrative or adjudicative body or official, when the USDA/FNS or other Agency representing the USDA, determines that the records are both relevant and necessary to the proceeding; or in an appropriate proceeding before an administrative or adjudicative body when the adjudicator determines the records to be relevant and necessary to the proceeding.

90 *Fed. Reg.* 26521, 26522 (June 23, 2025).

In addition, the Privacy Act allows federal agencies to disclose information "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(12); *see also Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980) ("[A] court order is merely one of the 'conditions of disclosure.'") (quoting 5 U.S.C. § 552a(b)).

Importantly, the Privacy Act does not create a qualified discovery privilege. *Weahkee*, 621 F.2d at 1082 (rejecting argument that Privacy Act makes disclosure of employment records privileged). Thus, throughout this opinion, the Court applies the relevant rules of discovery to balance Plaintiff's right to discovery of non-privileged, relevant information against Defendant's right to be free from intrusive and burdensome requests, and unreasonably cumulative or duplicative discovery. *See* Fed. R. Civ. P. 26(b)(1-2). The Court has also considered the privacy

interests of and potential harm to non-party employees who would be impacted by Defendant's responses to Plaintiff's discovery requests and the need to protect them from "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). Unless otherwise noted, where the Court has granted Plaintiff's Motion, the Court overrules Defendant's Privacy Act objections.

## B. Supernumerary Objections

One of the bases for Defendant's objections to Plaintiff's Interrogatories Nos. 3-10 is that they contain discrete subparts that should be counted as separate interrogatories. (Doc. 52 at 69-74.) Defendant further refused to answer Interrogatories Nos. 11-25 based solely on the objection that, counting all discrete subparts as separate interrogatories, Interrogatories Nos. 1-10 exceeded the twenty-five interrogatory limit set by the Court. (*Id.* at 75-83, 107-09; *see* Doc. 19 at 1.) In his Motion, Plaintiff asks the Court to overrule these supernumerary objections and compel Defendant to answer Interrogatories Nos. 11-25. (Doc. 52 at 7-11.)

For good or ill, "[i]nterrogatories often contain subparts." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664 (D. Kan. 2004) (quoting *Williams v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 701 (D. Kan. 2000)).

> Extensive use of subparts ... could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.

*Williams*, 192 F.R.D. at 701.

To balance these competing considerations, courts faced with the task of counting interrogatory subparts have generally held that "[s]ubparts count as one interrogatory ... only if they are logically or factually subsumed within and necessarily related to the primary question." *Rodriguez v. Chavez*, No. 12-cv-1071, 2013 WL 1444183, at *1 (D. Colo. Apr. 9, 2013) (quotation

marks and citations omitted). "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone?" *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997).

Put another way, "courts use a common-theme test to determine whether subparts count as a separate question or fall under the broader interrogatory." *Buster v. Bd. of Cnty. Commissioners for Lincoln Cnty.*, No. 21-cv-1208, 2023 WL 4202628, at *3 (D.N.M. June 27, 2023) (quotation omitted). Under the common-theme test, "'an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question,'" while an interrogatory with "'subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation.'" *Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 646 (D. Kan. 2011) (quoting 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1 (3d ed. 2010) at 39–40). In other words, "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C.2005); *see also Casey v. Gillson Trucking, Inc.*, 23-cv-228, 2025 WL 1135409, at *4 (D. Wyo. Apr. 17, 2025) (applying common-theme standard, noting that subparts that inquired about different characteristics of a truck were related to the primary question but that subparts that inquired about how data about the trucks had been preserved was a "new area of inquiry"); *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 09-cv-1862, 2010 WL 5464313, at *2 (D. Colo. Dec. 29, 2010) (applying common-theme standard, holding that subparts seeking information that "supports … [a] response to the primary question" should not count as multiple interrogatories but subparts seeking information that "is

related … but is sought for three separate events" should be "counted as three separate interrogatories"). Because whether an interrogatory's subparts are discrete is a highly fact-specific inquiry, the Court will address Defendant's arguments as it resolves each disputed interrogatory, tracking the total number of interrogatories posed.

### C.    Good Faith Conferral

Defendant argues that the Court should summarily deny Plaintiff's Motion because Plaintiff did not certify that he conferred in good faith with Defendant prior to filing. The Court rejects Defendant's argument.[5]

Federal Rule of Civil Procedure 37 provides that a party may move for an order compelling disclosure of certain information or responses to certain discovery requests, provided that the motion to compel "include[s] a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Local Rule 7.1 further states that a "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a).

"Whether the parties engaged in a good-faith conference will involve a case-by-case consideration of the facts." *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 723 (D.N.M. 2017). When a motion to compel describes efforts to confer in the motion and states that a party issued a good-faith letter to the opposing party, Rule 37(a)(1) is satisfied. *Legacy Mills, LLC v. Nat'l Sur. Corp.*, No. 21-cv-950, 2022 WL 17819675, at *1 (D.N.M. Dec. 20, 2022). A good-faith conferral should involve more than perfunctory emails. *Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424,

---

[5] Defendant also argues that the Court should deny Plaintiff's Motion because Plaintiff exceeded the page limit for exhibits under Local Rule 10.5. (Doc. 59 at 6.) However, Plaintiff's discovery requests and Defendant's responses and objections to them are necessary for the Court to rule on the Motion and constitute 89 of the 92 pages of exhibits.

444 (D.N.M. 2022); *Benavidez*, 319 F.R.D. at 723-24. Instead, a party "must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). When a party has made an effort to confer, the "harsh sanction of summary denial is not appropriate." *Benavidez*, 319 F.R.D. at 725 (denying request for summary denial "on these facts, because an effort to confer was, indeed, made—albeit tardy—and because the Motion to Compel raises real discovery disputes that the Court will have to resolve.")

Although Plaintiff fails to make the necessary conferral certification in his Motion, the Court will not in this instance summarily deny Plaintiff's Motion because the record before the Court demonstrates that the parties engaged in good faith, albeit unsuccessful, conferrals between December 2024 and February 2025. (Doc. 38 at 4-9, Doc. 41 at 4-9, Doc. 49 at 5-6, Doc. Ex. C.) However, the Court reminds Plaintiff that "*pro se* litigants are held to the same standards of professional responsibility as trained attorneys[,]" and "[i]t is a *pro se* litigant's responsibility to become familiar with and to comply with the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of New Mexico* (the 'Local Rules')." Guide for Pro Se Litigants at 4, United States District Court, District of New Mexico (October 2022). Plaintiff must familiarize himself with this Court's Local Rules and the Federal Rules of Civil Procedure and ensure that his filings in this case comply with these rules going forward.

D. **Interrogatories**

1. Interrogatory No. 1

Interrogatory No. 1 asks Defendant to identify each person contributing to her interrogatory answers and RFP responses and to provide certifications from each contributor. (Doc. 52 at 30.) Defendant objected to the request, arguing that the Federal Rules of Civil Procedure do not require such certifications for each individual contribution to a discovery response. (*Id.* at 66-67.) Defendant further responded that Shirley Pointer had assisted in preparing responses to Plaintiff's requests. (*Id.* at 67.)

Plaintiff now argues in his Motion that Federal Rule of Civil Procedure 33(b)(5) requires the requested certifications, asserting that defense counsel should not be allowed to provide answers and stating that "witnesses were not allowed to complete the interrogatories." (*Id.* at 6-7.) Under Rule 33, "[t]he person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). Here, Defendant objected to each interrogatory propounded without giving any substantive answers. (Doc. 52 at 66-83, 107-09.) As such, there were no individual contributors from whom to obtain certifications. The Court therefore DENIES Plaintiff's Motion as to Interrogatory No. 1, but notes that to the extent this Order requires further answers from Defendant, Defendant must comply with Rule 33's provisions.

2. Interrogatory No. 2

Interrogatory No. 2 asks Defendant to "identify the race, national origin, disability status (Yes/No), African accent (Yes/No), Age (as of October 2019), and current grade and job title (if transferred use the pick-up SF-50 or retired use last SF-50)" of a list of 21 employees. (Doc. 52 at 30.) Defendant objected to this interrogatory on the grounds that it is "overly broad, unduly

burdensome, seeks information that is not subject to discovery, and seeks information that is protected by the Privacy Act, 5 U.S.C. § 552a." (*Id.*) Defendant further objected on the grounds that the interrogatory seeks irrelevant information that has "no bearing on the claims or defenses at issue in this matter by seeking the race, national origin, and disability status of all the individuals identified in the interrogatory." (*Id.*) In his Motion, Plaintiff argues that he is seeking information about "similarly situated employees, hiring managers, and Plaintiff's supervisors" noting that his "complaint has race, national origin, and disability … claims." (*Id.* at 7.)

The Court fails to see how the age, current grade and job title of any of the 21 listed individuals is relevant to Plaintiff's claims which relate to events in 2018 and 2019. The Court will sustain Defendant's objections as to this information. Similarly, many of the individuals named in the interrogatory are not comparators, but either supervisors, managers, or co-workers who Plaintiff claims were "similarly situated in 2015," a period several years before the events described in the FAC. (Doc. 5; Doc. 62 at 5-6.) The information sought about these non-comparators has no bearing on Plaintiff's claims. Thus, and having considered all of the factors listed in Rule 26(b)(1), including "the importance of the discovery in resolving the issues" and "whether the burden … of the proposed discovery outweighs its likely benefit," the Court concludes that Interrogatory No. 2 is overbroad and overburdensome, and seeks information that is of marginal or no relevance and disproportionate to the needs of the case. The Court will deny Plaintiffs' motion to compel Defendant to respond to this request with information about non-comparators.

As to Jessica Varela, Kym Parsons, Christopher Huntsman, Leandro Ortiz, Elizabeth Walters, Somsakul Birdsong, Lisa Salazar, Jennifer Robinson and Mario Gonzales, who are the nine comparators addressed in Plaintiff's various claims in the FAC, the Court notes that

Defendant has provided much, if not all, of the information sought by Interrogatory No. 2 in her Answer to the FAC (Doc. 10), in her Responses to Plaintiff's Requests to Admit (Doc. 59 at 99-105), and in discovery for the administrative proceedings before the EEOC. (Doc. 5 at 32-126.) For example, in her answer, Defendant admits that Mr. Birdsong, Ms. Parsons, Ms. Varela, Mr. Ortiz, Mr. Huntsman, and Ms. Walters did not have African accents or a disability and were classified as GS-12 employees in FY 2020. (Doc. 10 at ¶¶ 244, 256, 263; Doc. 52 at 101 ¶ 13.) Defendant also admits that these six comparators were classified as GS-11 employees in FYs 2018 and 2019. (Doc. 52 at 100 ¶¶ 6-7.) Similarly, Plaintiff attaches to the FAC discovery material that he received in administrative proceedings that shows Defendant identified the race of these six employees and the race of the other three comparators, Mr. Gonzales, Ms. Robinson, and Ms. Salazar. (Doc. 5 at 114, 123, 126.) That material also shows that Mr. Gonzales and Ms. Robinson are not disabled. (*Id.* at 126.) And in her Answer, Defendant admitted that Mr. Gonzales, Ms. Salazar, and Ms. Robinson do not have African accents (Doc. 10 at ¶ 258.) The Court DENIES Plaintiff's Motion as to the information Defendant has already provided about the comparators.

However, because neither party points the Court to a portion of the record that establishes the national origin of these nine comparators, and because Plaintiff must show that they are outside any protected classes at issue, the Court GRANTS Plaintiff's Motion as to this category of information. Similarly, the materials before the Court do not establish Ms. Salazar's disability status and the Court GRANTS Plaintiff's Motion as to that aspect of the interrogatory as well. In all other respects Plaintiff's Motion is DENIED as to Interrogatory No. 2.

3.   Interrogatories Nos. 3 and 4

Interrogatories Nos. 3 and 4 ask Defendant to "describe what happened" during the FY 19 reviews by answering each of four subparts that ask Defendant to identify (1) the dates that

Plaintiff's supervisors completed their reviews of Plaintiff and six comparators, (2) the dates on which those supervisors emailed their reviews to Ms. Bergener, (3) the documents attached to their email(s), and (4) the date Ms. Bergener completed her review and responded back to the supervisors. (Doc. 52 at 30-31.) Defendant objects to these interrogatories on the grounds that they are "vague as to the meaning of 'describe what happened' and what 'review and email communications'" are sought and because they seek "information that is protected by the Privacy Act, 5 U.S.C. § 552a." (Id. at 68-69.) Defendant also argues the interrogatories contain discrete subparts that should be counted as separate interrogatories. (*Id.* at 68-69.) Finally, Defendant argues that it produced the requested information in EEOC proceedings. (*Id.* at 68-69.) In his Motion, Plaintiff makes cursory arguments that the interrogatories are not vague, "the subparts are logically or factually subsumed within and related to the primary question," and he was not provided with this information in EEOC proceedings. (*Id.* at 7-8.)

As part of his retaliation claim in Count I of the FAC, Plaintiff alleges that Defendant did not follow the agency's performance appraisal review process during FY 19. (Doc. 5 at ¶¶ 80-81.) More specifically, Plaintiff alleges that although Ms. Anderson requested that the employees named in Interrogatory No. 3 "re-review [their] supplemental goals, expectations, and measures and provide information as to what specific measures [they] feel have been met by those accomplishments," she did not require the employees to do so before awarding their ratings and further that Ms. Bergener, as the reviewing official, did not review any such information. (Doc. 5 at ¶¶ 80-81). He attaches the at-issue email to the FAC, which notes that employees are "required to submit their accomplishments" pursuant to departmental policy. (Doc. 5 at 118.) To the extent Plaintiff alleges that the supervisors did not follow their own stated or Defendant's procedures in conducting performance appraisals, that information may be relevant to demonstrate pretext. *See*

*Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Although Defendant asserts that it provided the four categories of information sought in Interrogatories Nos. 3 and 4 to Plaintiff in EEOC proceedings, it has not attached any of that information to its Motion. However, Plaintiff attaches several Exhibits to his complaint and the FAC that demonstrate Defendant has provided at least some of the information requested by Interrogatories Nos. 3 and 4 in underlying EEOC proceedings. In any event, answering the four categories of information listed by the Court above, even if duplicative of prior disclosures, does not seem overly onerous. The Court will GRANT Plaintiff's Motion insofar as it will require Defendant to provide answers to the four categories listed herein. To the extent that these interrogatories could be read to seek any further description of "what happened," the Court will sustain Defendant's objections.

As to Defendant's supernumerary objections to these interrogatories, the Court finds that the subparts relate to a common theme rather than discrete lines of inquiry not related to or subsumed within the primary question. The Court notes that Plaintiff is not an attorney and many of the interrogatories are not artfully worded. The primary questions – "[d]escribe what happened during the FY 19 performance appraisal review and email communications" – are quite general and standing alone do not describe the type of information Plaintiff seeks. The subparts thus serve both to define the type of information Plaintiff seeks and to limit it – asking Defendant to provide key dates in that process and specific information provided from the first line supervisor to the

approving official. The Court thus construes each of these interrogatories as a single interrogatory (bringing the total to four).[6]

4.   Interrogatory No. 5

In Interrogatory No. 5 and its two subparts, Plaintiff seeks to have Defendant (A) identify, as to all employees who received "above fully successful" ratings in the FY 19 performance appraisal, "each and all measures" within the three elements in which they received "Exceeds" ratings, and (B) "[s]tate the minimum measures above fully successful employees should meet in FY 19 performance plan to receive exceeds in each of the three Exceeds elements." (Doc. 52 at 32.) Defendant objected to subpart A on the grounds that (1) the phrase "with each and all measures credited" is vague; (2) the request is overbroad and seeks irrelevant information "in that it seeks information about a voluminous number of employees across the entire Agency with no apparent limits, and regarding 'elements' and 'measures' that do not have a bearing on the claims or defenses"; and (3) the request seeks information protected by the Privacy Act. (*Id.*) Defendant also objected to the interrogatory on the grounds she had already answered it through her responses to requests for production in Plaintiff's underlying EEO proceedings. (*Id.*) In Plaintiff's Motion, he argues that Ms. Anderson would understand what the contested phrase "with each and all measures credited" meant, that he does not possess the information requested, and that the ASC Service Team "contained less than 20 employees at a time." (*Id.* at 8.)

---

[6] Defendant makes a cursory argument in her response and occasionally in her objections to the interrogatories, (*see, e.g.,* Doc. 59 at 8 n.3 & Doc. 52 at 68 (Objections to Interrogatories Nos. 3 and 4)), that the Court should count interrogatories seeking information about different comparators as separate interrogatories. Such an "approach is not consistent with spirit or purpose of the discovery rules and would lead to absurd results." *Los Alamos Nat'l Bank, N.A. v. Fid. Bank*, No. 18-cv-00613, 2019 WL 2340959, at *3 (D.N.M. June 3, 2019) (rejecting argument to count interrogatories seeking information about multiple mortgages related to the claim as discrete and separate interrogatories).

In the FAC, Plaintiff describes the FY 19 employee performance appraisal process. (Doc. 5 at ¶¶ 27-37.) According to Plaintiff, FY 19 performance plans for the ASC Service Team contained three elements and each element contained six to nine measures.[7] (*Id.* at ¶¶ 27, 29, 34.) Plaintiff alleges that to achieve a rating higher than "fully satisfies" in any element an employee must rate "exceeds" in a majority of the measures. (Doc. 5 at ¶ 37; Doc. 52 at 101 ¶ 9 (addressing only Element 1).) Despite Plaintiff's inartful drafting of Interrogatory No. 5, the FAC provides context about what the phrase "each and all measures credited [as] exceeds" means.

The FAC names six comparators who received higher ratings in the FY 19 evaluation process than Plaintiff. (Doc. 5 at 63.) To the extent Interrogatory 5A seeks information about anyone else, it is overbroad and both the burden on Defendant to produce the information and the invasion of the privacy of employees who are not named in the operative complaint weigh in favor of narrowly tailoring the request, which the Court limits to the six comparators named in Paragraph 63 of the FAC.

Finally, although it is clear that Defendant has provided Plaintiff with some of the information he seeks, as Plaintiff attached the FY 19 performance appraisals of the six named comparators as an exhibit to his original complaint (Doc. 2 at 78-84), those appraisals do not reveal the employees' ratings on each measure within the three elements but rather show their overall rating for each element. (*Id.*) Thus, as to these six comparators, Defendant shall answer 5A to identify each of the measures within the three elements for which each comparator received an "exceeds" rating.

---

[7] In Interrogatory No. 5, Plaintiff interchangeably uses the terms "item" and "measure" to describe the sub-elements in each primary element. The FAC more consistently uses the term "measure," which the Court shall use throughout this order.

Regarding subpart B of Interrogatory No. 5, Defendant argues that she has already provided the requested information through responses to requests for production in the underlying EEO proceedings. However, Plaintiff states in his Motion that he does not "possess[] … the relevant information or documents [responsive] to this [interrogatory]," (Doc. 52 at 8.) Defendant has pointed to no evidence to show that the records she produced in the EEO investigation fully answer 5B as required under the relevant Federal Rules of Civil Procedure. (*See* Doc. 59); Fed. R. Civ. P. 33(b)(3). Furthermore, the Court observes that Defendant denied RFA No. 9, which asked Defendant to admit that an employee must achieve a rating of "exceeds" in a majority of the measures within an element to achieve a rating of exceeds for that element. (Doc. 52 at 101.) Thus, the subject matter of Interrogatory 5B remains at issue, and Defendant must answer it.

In short, the Court sustains Defendant's objections as to subpart A but GRANTS Plaintiff's Motion in part as to 5A and B only as set forth above. The Court further finds that subparts A and B are discrete and not related to each other and thus count as separate interrogatories, bringing Plaintiff's total to six.

    5.  <u>Interrogatory No. 6</u>

Interrogatory No. 6 asks Defendant to "[d]escribe how Ms. Anderson and Ms. Bergener reviewed the FY 19 accomplishments submitted by the above fully successful employees in the ASC Service Team in relation to the FY 19 performance plan measures" by responding to the following subparts:

> (A) Identify each and every employee with above fully successful rating with the date FY 19 accomplishments submitted to his or her supervisor;
>
> (B) For each and every employee identified in subpart A, state the specific measure numbers in the FY 19 performance plan each employee feels met per the accomplishments submitted; and

(C) For each and every employee identified in subpart A, identify the measures supervisor credited him or her in the FY 19 performance plan and copy and paste from each person's accomplishments areas that merit each measure credited by supervisor.

(Doc. 52 at 32-33.)

Defendant raised several objections to this interrogatory, including that the request for information for all employees of the ASC Service Team is overly broad, unduly burdensome, and irrelevant to Plaintiff's claims. (*Id.* at 70-71.) Plaintiff's arguments for overruling these objections are difficult to follow but seem to assert that the interrogatory only seeks information regarding "six similarly situated employees with higher rating[s]." (*Id.* at 8-9.)

The Court will sustain Defendant's objections to Interrogatory No. 6. Despite Plaintiff's assertions, the interrogatory as phrased is not limited to the six identified comparators but seeks information on all employees on the nearly twenty-person ASC Service Team. (Doc. 52 at 70; *see id.* at 8.) The Court fails to see how information regarding the review of accomplishments for up to thirteen individuals not identified in the FAC is relevant or proportional to Plaintiff's claims. (Doc. 5.) To the extent the scope of this interrogatory also covers relevant information as to the six named comparators, because it appears to build upon, and in some respects duplicate, Interrogatories Nos. 3, 4, and 5, and Plaintiff either already has some of the information,[8] or will receive some of it in supplemental responses to the preceding interrogatories, the Court declines to rewrite Interrogatory No. 6 to acceptably narrow its scope. Plaintiff's Motion is DENIED as to

---

[8] Plaintiff attaches several exhibits to his original Complaint that demonstrate Defendant has provided much of the relevant information sought including, for example: Exhibit 10, containing emails from Mr. Ortiz, Mr. Huntsman, and Ms. Walters to their supervisor in support of their accomplishments, (Doc. 2 at 56-77); Exhibit 11, containing the final performance appraisal for each employee, (*Id.* at 78-84); Exhibit 5, containing the final performance appraisal for Plaintiff, (Doc. 2 at 47); and Exhibit 3, containing affidavits completed by the supervisors as part of the EEOC process that describe the basis for their ratings of the employees. (Doc. 2 at 13-42).

Interrogatory No. 6. *See* Fed. R. Civ. P. 26(b)(1) and (b)(2)(C)(i). Finally, Interrogatory No. 6

raises two intertwined but distinct lines of inquiry, and shall be counted as two interrogatories.

Therefore, the total number of interrogatories propounded rests at eight.

    6.  <u>Interrogatory No. 7</u>

Interrogatory No. 7 provides:

> During the FY 19 interim performance appraisal rating of Mr. Ortiz, Mr. Huntsman,
> and Ms. Walters their supervisor Anna Garcia requested their accomplishments in
> order to determine their ratings. Ms. Garcia sent the ratings to Emily Bergener as
> reviewing official. Please answer subpart questions separately in relation to the
> communication that existed during interim ratings of Mr. Ortiz, Mr. Huntsman, and
> Ms. Walters:
>
>> (A) What date and time did supervisor Ms. Garcia and reviewing official
>> Ms. Bergener sign each and every employee's interim appraisal rating;
>>
>> (B) What date and time did Ms. Garcia send email to these employees to
>> request their accomplishments AND what date and time each and every
>> employee responded to Ms. Garcia's email;
>>
>> (C) What date and time did Ms. Garcia send email to reviewing official Ms.
>> Bergener to review each and every employee's rating AND what date and
>> time did Ms. Bergener responded; and
>>
>> (D) How many minutes did it take reviewing official Ms. Bergener to
>> review each and every employee's accomplishments before signing the
>> appraisal rating.

(Doc. 52 at 33.)

    Defendant objected to this interrogatory on the grounds that the time supervisors spent

reviewing these employee's accomplishments is irrelevant to Plaintiff's claims and that business

records provided in the underlying EEO proceedings responded to Plaintiff's request. (*Id.* at 71-

72.) In his Motion, Plaintiff argues that documents produced in EEO proceedings did not respond

to this interrogatory and that this information is relevant, giving the following explanation:

> Anna Garcia supervised Mr. Ortiz, Mr. Huntsman, and Ms. Walters in FY
> 19 and provided interim ratings before she transferred to another Agency

that Ms. Bergener continued supervising them. These three employees were similarly situated to Plaintiff because Ms. Bergener reviewed their final ratings as she did to Plaintiff and Defendant admitted to[.]

(*Id.* at 9 (citations omitted).)

The Court sustains Defendant's relevance objection, as the Court fails to understand (1) Plaintiff's explanation for how the information sought in this request relates to his claim; and (2) how the timing of the various phases of interim performance reviews are relevant to Plaintiff's claim that Defendant discriminated against him on his final performance review. *See* Fed. R. Civ. P. 26(b)(1); *see Swackhammer*, 225 F.R.D at 660. Plaintiff's Motion is therefore DENIED as to this interrogatory. Finally, the Court construes Interrogatory No. 7 as a single interrogatory and the total number of interrogatories propounded by Plaintiff stands at nine.

7.   Interrogatory No. 8

Interrogatory No. 8 asks Defendant to "answer subpart questions separately on how the employees that received above fully successful ratings starting from FY 15 to FY 19 rated by supervisor using each and every year['s] performance plan measures and accomplishments submitted":

> (A) For each and every year starting from FY2015 to FY2019, identify each and every employee that received above fully successful rating in ASC Service Team and [the employee's] supervisor's name;
>
> (B) For each and every employee identified in subpart A for each and every year, indicate the measures employee feel met using his or her accomplishments submitted;
>
> (C) For each and every employee identified in subpart A for each and every year, state each measure credited on each exceeds element of each and every year's performance plan by the supervisor; and
>
> (D) For each and every employee identified in subpart A for each and every year, describe where in each and every year's submitted accomplishments the specific measures credited in subpart C.

(Doc. 52 at 33-34.)

22

Defendant objected to this interrogatory on the grounds that it is overly broad, unduly burdensome, and irrelevant, noting that Plaintiff's case is not "about matters that occurred prior to 2018." (Doc. 52 at 72.) Defendant further argues that the interrogatory seeks "information about a voluminous number of employees across the entire agency … that do not have a bearing on the claims or defenses." (*Id.*) Finally, Defendant raises supernumerary and Privacy Act objections. (*Id.*)

Plaintiff in turn argues, without further explanation, that the information sought in the interrogatory is relevant because "it targeted Plaintiff['s] similarly situated employees that have higher ratings from 2015 to 2019 in the work unit that are less than 20 employees[] altogether." (*Id.* at 10.) Plaintiff also baldly asserts that the subparts are "logically or factually subsumed within and related to the primary question." (*Id.*) Plaintiff does not further clarify this argument in his reply to Defendant's response. (Doc. 62.)

The Court sustains Defendants objections and DENIES Plaintiff's Motion as to this interrogatory. Having considered all of the factors listed in Rule 26(b)(1), including "the importance of the discovery in resolving the issues" and "whether the burden . . . of the proposed discovery outweighs its likely benefit," the Court concludes that by seeking information dating back to 2015 for all ASD service employees, Interrogatory No. 8 is overbroad and overburdensome, and seek information that is of marginal or no relevance and disproportionate to the needs of the case. Furthermore, Interrogatory No. 8 also seeks some information that Plaintiff either already possesses or that is requested in other interrogatories and thus is also unreasonably cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Finally, because Interrogatory No. 8 seeks information about five distinct years of performance review, the Court construes it to have at least five discrete lines of inquiry, bringing Plaintiff's total number of interrogatories to fourteen.

8.  Interrogatories Nos. 9 – 14

Interrogatories Nos. 9-14 are similar in that the each begins with a statement that summarizes the reason Plaintiff believed his supervisor did not credit him in FY 19 with an "exceeds" for one of each of measures 1, 2, 3, 5, 7, and 8 respectively in Element 1. (Doc. 52 at 34-38.) These interrogatories then ask Defendant to answer between three to five subparts to, in substance, (1) identify "each and every employee" on the ASC service team "credited for" the specified measure, (2) provide details and dates of each employee's work performed in the specified measure, and (3) describe where in the employees' submitted FY 19 accomplishments the specified measure is addressed.  (Doc. 52 at 34-38.)

Defendant objected to Interrogatories 9-14 with supernumerary objections. (*Id.* at 73-78.) He also objected to Interrogatories 9 and 10 on the grounds that they are vague overly broad, unduly burdensome, and irrelevant in that they seek information regarding all employees on the ASC Service Team. (*Id.* at 73-75.) Defendant further raised vagueness and Privacy Act objections to Interrogatories 9 and 10. (*Id.*) Finally, Defendant points out that she provided some of the information sought to Plaintiff in administrative proceedings. (*Id.*) In the Motion, Plaintiff clarifies that the interrogatories are intended to be limited to the six similarly situated employees named in the FAC. (*Id.* at 10-11.) Plaintiff also makes cursory undeveloped arguments that these interrogatories are not vague, the subparts are not discrete, and he does not have responsive information from EEOC proceedings. (*Id.*)

Although the at-issue interrogatories are not well drafted, the Court is able to discern that they relate to performances plan measures and ratings, and thus, at least in that regard, they are not vague.  Further, as noted in Section III.D.4, *supra*, the comparators' FY 19 performance appraisals do not show the supervisors' ratings of the comparators regarding specific measures within each

element or describe the bases for those ratings. (Doc. 2 at 78-84.) However, Interrogatories 9 through 14 are overbroad and burdensome to the extent that they seek information about employees beyond the six named comparators.  These interrogatories are likewise overbroad and burdensome insofar as they request specific details of any given employee's job performance for FY 19. Indeed, to answer such a request would require Defendant to detail the underlying data that supports the supervisor's appraisal of an at-issue employee and compile extensive information about that data to include, for example, the date of in-depth research, dates during which the comparators participated on a project, dates the comparators shared information or updates about a project, dates the comparators made presentations about a project, and/or the names of customers mentored. This could require Defendant to detail tasks performed each workday in the at-issue calendar year during which each ASD service employee performed his or her job. Having considered all the factors listed in Rule 26(b)(1), including "the importance of the discovery in resolving the issues" and "whether the burden . . . of the proposed discovery outweighs its likely benefit," the Court will require Defendant to only answer the at-issue interrogatories by:

(1) identifying each of the six named comparators who were credited in FY 19 with an "exceeds" in any of the Measures 1, 2, 3, 5, 7, and/or 8 in Element 1, and

(2) identifying where in the six comparators' submitted FY 19 accomplishments the specified measure is addressed.

In all other respects, the Court DENIES Plaintiff's Motion with respect to Interrogatories Nos. 9-14 for the reasons already stated and also because much of the information sought is marginally or entirely irrelevant to the claims or defenses and disproportionate to the needs of the case.  Finally, the Court finds that Interrogatories Nos. 9 through 14 each raise at least two discrete lines of inquiry. Because the Court construes each of the six interrogatories as two interrogatories,

the total number of interrogatories posed rests at twenty-six. Thus, in addition, the Court DENIES Plaintiff's motion to compel regarding Interrogatories Nos. 15-25, which exceed the twenty-five interrogatory limit set by the Court.

### E.    Requests for Production

1.    <u>RFPs Nos. 1-3</u>

RFPs Nos. 1-3 ask Defendant to produce "ANY and ALL" documents from 2015-2019 related to all ASC Service Team employees who received performance ratings above "fully successful" during that period, specifically seeking (1) performance appraisal ratings and annual performance plans; (2) employee accomplishments and related emails sent to supervisors; and (3) emails between supervisors and reviewing officials regarding performance appraisal reviews. (Doc. 52 at 49.) Among the objections Defendant raised for each of these requests are overbreadth, undue burden, and irrelevance because they (1) seek "any and all documents" on broad topics; (2) extend back to 2015, when Plaintiff's claims relate only to issues occurring after 2018; and, (3) encompass a potentially voluminous number of employees across a very large governmental agency with no relevance to the case. (*Id.* at 83-85.) Defendant also raises a Privacy Act objection and asserts that she has already produced responsive documents in EEOC proceedings. (*Id.*; Doc. 59 at 17-18.) In his Motion, Plaintiff argues that the number of employees covered in these requests would be less than twenty and therefore does not seek a voluminous number of records. (Doc. 52 at 12-13.) Plaintiff admits in his Motion that Defendant provided documents responsive to RFPs Nos. 1-2, regarding the six named comparators for FY 19, in administrative proceedings. (Doc. 52 at 12-13.)

As discussed throughout Section III.D, *supra*, and for the same reasons stated therein, the Court finds that documents regarding employees other than the six comparators named in the FAC

or for performance appraisal cycles other than the FY 19 cycle are not relevant to the claims and defenses in this case and requests for such documents are overbroad and unduly burdensome. Further, because Plaintiff admits that Defendant produced responsive documents to RFPs Nos. 1 and 2 regarding the six named employees for FY 19, the Court finds that Defendant has responded to these requests to the extent that they seek discoverable material and DENIES Plaintiff's Motion to compel regarding those requests.

RFP No. 3 requests that Defendant produce email exchanges between the six comparators' first-line supervisor and the Department's official who approved the supervisor's rating with respect to the six comparators' FY 19 performance appraisal. Defendant contends that she has provided such documents in EEOC proceedings and directs the Court to Exhibits C and D of her response to Plaintiff's M. (Doc. 59, Exs. C & D.) Exhibit C is a letter Defendant provided to Plaintiff on February 6; in part it explains that Defendant has provided information responsive to RFP No. 3. (Doc. 59 at 2 (citing Exhibit D).) Exhibit D is Defendant's response to Plaintiff's document requests during EEOC proceedings. (Doc. 59, Ex. D.) Documents Request 14 of Exhibit D shows that Plaintiff requested emails between a supervisor and a reviewing officer related to performance appraisals (unlimited by time) during the EEOC proceedings. (Doc 59 at Ex. D ¶ 14.) In her response to Documents Request 14, Defendant directed Plaintiff to "Attachment 12" of her administrative response and stated that she has no additional documents responsive to the request. (*Id.*)

Because Defendant has already provided to Plaintiff all responsive documents she possesses as to the six comparators, the Court will DENY Plaintiff's Motion regarding RFP No. 3.

27

2. <u>RFP No. 5</u>

RFP No. 5 asks Defendant to "produce ANY and ALL documents regarding how Ms. Medina ranked and rated panel recommendations, resumes, and reference checks toward determining selection recommendations sent to management on the 2019 policy position Plaintiff applied to." (Doc. 52 at 49.) Defendant objects to this request on vagueness grounds, stating that "[i]t is not clear what documents would possibly be responsive, because it seeks documents 'regarding how Ms. Medina ranked and rated panel recommendations.'" (*Id.* at 86.) Defendant further argues that the request is overly broad and unduly burdensome because (1) "[r]equests seeking any and all documents regarding a topic are overly broad on their face and are improper because they leave the responding party … to guess as to what documents are even responsive"; and (2) the request seeks records "regarding a potentially voluminous number of employees across a very large governmental agency, the vast majority of which would have no relevance to this case." (*Id.* (quotation marks omitted).) In his Motion, Plaintiff argues that the request only seeks "documents regarding how Ms. Medina ranked and rated panel recommendations, resumes, and reference checks toward determining selection recommendation sent to management on the 2019 policy position" and that request would only entail producing "less than 3 pages [of] document[s]." (*Id.* at 13-14.)

A request for production must describe the documents sought with sufficient particularity that a person of ordinary intelligence can determine what documents adequately respond to the request. *Regan-Touhy*, 526 F.3d at 649–50. Here, Plaintiff's request for "any and all documents regarding how Ms. Medina ranked and rated" candidates for a position to which Plaintiff applied lacks sufficient precision for Defendant, or the Court, to ascertain what documents respond to the request. For example, it is not clear from the text of the request whether Plaintiff seeks documents

that advise hiring officials within the Department how they should rank or rate applicants for promotion or whether it also (or only) seeks documents created by Ms. Medina, such as any rubrics she created or notes she took when reviewing panel recommendations, resumes, or reference checks. Although Plaintiff notes that the request would require Defendant to produce less than 3 pages of documents, it is not clear what those three pages of documents would include.

If Plaintiff was one of finalists recommended by the panel for the at-issue 2019 policy job, and to the extent that Defendant possesses either (1) a standardized rubric that Ms. Medina was required to consult in her evaluation of the finalists recommended by the panel for the at-issue 2019 policy job and/or (2) notes that she made in making her selection among the finalists, Defendant shall produce those materials to Plaintiff. If Defendant determines that the category of documents is so voluminous as to be unduly burdensome, it may so notify the Court.  Otherwise, it shall produce the material specified by the Court herein within two weeks of entry of this Order. In all other respects, Plaintiff's Motion is DENIED as to RFP No. 5.

3.   RFP No. 12

RFP No. 12 asks Defendant to produce, for each employee on the ASC Service Team who was rated above fully successful and credited for "Exceeds Element 1 measure 9 in FY 19," "ANY and ALL documents regarding email communications to show the employee scheduled and provided at least two (2) safety briefings at the team meetings." (Doc. 52 at 51.) Defendant objected to this request asserting that it is vague, overly broad, and unduly burdensome, and seeks irrelevant material. (*Id.* at 92.) In particular, Defendant asserted that the documents regarding employees across the ASC Service Team, as opposed to the six comparators, lack relevance and make the request overly broad. (*Id.*) In his Motion, Plaintiff argues that he seeks only email communications showing safety briefings provided by similarly situated employees who received

29

above fully successful ratings in FY 19, and that Ms. Bergener identified deficiencies in his own performance on "Exceeds Element 1 measure 9." (*Id.* at 14.)

The Court finds that RFP No. 12 as written is overly broad and unduly burdensome. However, it is unclear whether it would remain unduly burdensome for Defendant to respond when limited to the six comparators identified in the FAC who received ratings above fully successful during the FY 19 performance cycle who also achieved an "exceeds" rating on Element 1, Measure 9. Thus, and in weighing the interests of both parties in the just, speedy and inexpensive determination of this case, the Court will require Defendant to within two weeks of entry of this Order either produce to Plaintiff email communications demonstrating that any of the six comparators meeting the criteria (*i.e.*, an overall FY 19 rating above "fully successful" and an "exceeds" on Element 1, Measure 9) "scheduled and provided at least two (2) safety briefings at the team meetings" during FY 19, or show cause why doing so would be unduly burdensome. In all other respects, Plaintiff's Motion is DENIED as to RFP No. 12.

4. <u>RFP No. 13</u>

RFP No. 13 asks Defendant to "produce ANY and ALL documents regarding how the applicants interviewed on Melissa Dittmann position [sic] were ranked and rated or indicate the page number in ROI#: FS-2019-00308 if provided to EEOC agent during investigation." (Doc. 52 at 51.) Defendant objected to this request on the grounds that it is overly broad and unduly burdensome, arguing that requests seeking "any and all documents regarding" a topic are overly broad on their face and leave the responding party to guess as to what documents are even responsive, and because the request is vague as to the meaning of "Melissa Dittmann position." (*Id.* at 93.) In his Motion, Plaintiff argues that he seeks only documents showing how applicants

for Ms. Dittmann's position were ranked and rated, and that he does not possess these documents. (*Id.* at 14.)

Count IV of the FAC describes a 2018 position to which Plaintiff applied as the "Melissa Dittman position." (Doc. 5 at Count IV and ¶ 228 (describing the position from Job Announcement Number: 18-ASCHRM-509750FS-SB).) This provides sufficient context so that RFP No. 13 is not vague. In the FAC, however, Plaintiff pleads that the Department admitted during administrative proceedings that "all the documentation pertaining to the selection process [was provided] to EEOC official." (Doc. 5 at ¶ 232.) Within two weeks of entry of this Order, Defendant shall either produce to Plaintiff the materials that were provided to the EEOC official or identify the page number(s) in ROI#: FS-2019-00308 at which these materials are logged. In all other respects, Plaintiff's Motion regarding RFP No. 13 is DENIED. *See* Fed. R. Civ. P. 26(b)(1).

    5.  <u>RFP No. 14</u>

RFP No. 14 asks Defendant to "produce ANY and ALL documents regarding Douglas Crosbie[']s SF-50 and confirmation letter of when he was hired or promoted as HR Spec … dated September 3, 2015[,] and when he became [a] supervisory human resources specialist (Recruitment) per SF-52#: 16-115106-211500." (Doc. 52 at 51.) Defendant objected to this request on the grounds that (1) it is overly broad and unduly burdensome, arguing that requests seeking "any and all documents regarding" a topic are overly broad on their face and leave the responding party to guess as to what documents are even responsive; and (2) it seeks irrelevant information, as Mr. Crosbie's SF-50 and documents relating to his employment have no bearing on any of the claims or defenses. (*Id.* at 93.) In his Motion, Plaintiff argues that Mr. Crosbie was similarly situated to him in 2015 and received a superior rating and award payment from Ms. Anderson, and that he seeks only approximately four pages of documents. (*Id.* at 14-15.)

Mr. Crosbie is not one of the six comparators who Plaintiff alleges received more favorable treatment during the FY 19 performance appraisal process. (*See* Doc. 5 at Counts I, V-VII.) Further, Mr. Crosbie is not one of the persons selected for a position to which Plaintiff applied that are described in Counts III and IV. (*See id.* at Counts III-IV.) Although it may be that Mr. Crosbie was similarly situated to Plaintiff in 2015, this fact, in isolation, has no bearing on any of the relevant claims or defenses in this case. The Court finds that RFP No. 14 does not seek information relevant to Plaintiff's claims and is disproportionate to the needs of the case and therefore DENIES Plaintiff's motion regarding this request.

6.   <u>RFPs Nos. 20-21 and 24-25</u>

RFP No. 20 requests documents related to the FY 15 performance appraisal cycle. (Doc. 52 at 52.) More specifically, it seeks communications about accomplishments that were exchanged between employees who received ratings above "fully successful" and the supervisor who rated them and between the rating supervisor and approving supervisors. (*Id.*) RFP No. 21 seeks similar communications related to the FY 18 performance appraisal cycle. (Doc. 52 at 52). RFP No. 24 asks Defendant to produce the "performance appraisal rating for each and every employee rated above fully successful in FY 15 in ASC service team." (Doc. 52 at 64.) RFP No. 25 asks Defendant to "produce the accomplishments submitted to the supervisor by each and every employee rated above fully successful in FY 18 in ASC Service Team." (Doc. 52 at 64.) Defendant objected to these four requests on the grounds that they seek irrelevant information, as the case does not concern issues related to FY 15 or FY 18 performance appraisals, and are also overly broad and unduly burdensome. (*Id.* at 97.)

In his Motion, Plaintiff makes a cursory argument that he seeks limited information about "similarly situated" employees and that documents responsive to each request include only three

to six emails or concern fewer than six employees. (*Id.* at 15-16.) Regarding RFPs Nos. 20 and 21, Plaintiff does not explain why documents concerning the FY 15 or FY 18 performance appraisal process would be relevant to his claims when Counts I and Counts V-VII concern the FY 19 performance appraisal process. (*Id.*)

Regarding RFPs Nos. 24 and 25, Plaintiff argues that the requests are relevant because the supervisor identified in each request, Ms. Anderson, was his supervisor from 2015 to 2019. (*Id.* at 16.) Although Plaintiff argues that Ms. Anderson supervised him throughout this period, the mere fact of continuous supervision does not establish the relevance of performance evaluations conducted four years prior to the alleged discriminatory conduct.

The Court finds that these requests seek information that is not relevant to Plaintiff's claims and disproportionate to the needs of the case and therefore DENIES Plaintiff's Motion regarding RFPs Nos. 20, 21, 24, and 25.

7.  RFP No. 22

RFP No. 22 asks Defendant to "produce ANY and ALL documents justifying each and every panel member that interviewed interviewees in Ms. Medina policy positions worked in at least one branch of policy e.g. employment policy, pay policy, benefit policy etc. and produce SF-50 to support the branch of policy worked." (Doc. 52 at 53.) Defendant objected to this request on the grounds that it is vague and indecipherable, such that she cannot reasonably determine what documents the request seeks. (*Id.* at 98.) Defendant also argued that the request is overly broad and unduly burdensome. (*Id.*) In his Motion, Plaintiff argues that he seeks documents showing the qualifications of three panel members, asserting that they lacked policy experience necessary to evaluate candidates for policy positions. (*Id.* at 15-16.)

Plaintiff's argument regarding the relevance of RFP No. 22 is misplaced. Even if it is true that the panel members lacked policy experience necessary to evaluate candidates, it does not follow that they therefore engaged in discrimination based on race, national origin, or disability. The Court DENIES Plaintiff's Motion regarding RFP No. 22.

8. <u>RFP No. 23</u>

RFP No. 23 asks Defendant to "produce ANY and ALL documents regarding GS-201-11 SF-50, current grade SF-50 (if transferred pick-up SF-50 or retired SF-50), and confirmation letter of any and all employees in ASC team that received ratings above fully successful from FY2015 to FY2019 that are retired, transferred, or currently in GS-13 or above." (Doc. 52 at 53.) Defendant objected to this request on the grounds that it is overly broad and unduly burdensome and not reasonably limited in time or scope, noting that the case does not concern issues prior to 2018. (*Id.* at 99.) In his Motion, Plaintiff argues that he seeks SF-50 forms only for employees currently in GS-13 and above, estimating this would cover fewer than 20 similarly situated employees and amount to approximately one page per employee, but does not explain why the documents requested are related to his allegations. (*Id.* at 16.)

Counts I and Counts V-VII concern alleged discriminatory and retaliatory treatment during the FY 19 performance appraisal process. (Doc. 5 at Counts I, V, VI, and VII.) Counts III and IV concern positions for which Plaintiff applied, but for which he was not selected, in 2018 and 2019. (Doc. 5 at Counts III and IV.) Although Count II alleges, generally, that Defendant limited his opportunities for promotion it alleges no specifics, other than those described in Counts III and IV. (Doc. 5 at Count II.) It appears that RFP No. 23 asks Defendant to provide evidence that other employees received promotions when Plaintiff did not, and as such might seek relevant information if there were a specific promotional opportunity, such as those alleged in Counts III

and IV, at issue. Plaintiff, however, has identified in Counts III and IV the persons who received the promotions, and thus were allegedly treated more favorably than he was.

The Court finds that further inquiry into multiple non-relevant years and into employees about whom Plaintiff has made no specific allegation of more favorable treatment amounts to little more than a fishing expedition, and an unwarranted invasion of the privacy of those unnamed employees. The Court therefore DENIES Plaintiff's request regarding RFP No. 23.

## F.    Requests for Admission

In his Motion, Plaintiff "queries the sufficiency" of many of Defendant's denials to his RFAs, including RFAs Nos. 2-3, 8-10, 14-19, and 22-29. (Doc. 52 at 17.) Many of Plaintiff's arguments rest upon his assertion that the proposed statement is in fact true or that Defendant has sufficient information to provide a response.

Rule 36 governs requests to admit, and a party can admit or deny the request, object to it, or state in detail why it cannot truthfully admit or deny it. Fed. R. Civ. P 36(a)(4) & (5). A party that states it lacks sufficient information or knowledge to admit or deny an RFA must make a reasonable inquiry into obtaining information necessary to respond. *Id.* at (4). A party that objects to an RFA bears the burden of persuasion on the objection. *Id.* at (5).

Requests to admit "are not necessarily used to obtain information, but rather to expedite trial and relieve parties of the burden and expense of proving facts which are undisputed." *Oliveros v. Bd. of Cnty. Commissioners of Bernalillo Cnty.*, No. 02-cv-732, 2003 WL 27385057, at *1 (D.N.M. July 14, 2003) (citing *Kershner v. Beloit Corp.*, 106 F.R.D. 498 (D. Me. 1985)); *see also United States v. Edelman,* No. 06-cv-1216, 2009 WL 10701204, at *2 (D.N.M. Jan. 26, 2009). "The twin goals of admissions are to 'facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.'"

*Tom v. S.B., Inc.*, No. 10-cv-1257, 2012 WL 12869331, at *1 (D.N.M. July 25, 2012) (quoting Fed. R. Civ. P. 36 advisory committee's note (1970 amend.).) Requests to admit should focus on important, substantive matters and are not appropriate to address evidentiary minutiae. *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, Civ.A No. 94-2395, 1995 WL 625744, at *3 (D. Kan. Oct. 5, 1995).

Rule 36 does not require admissions – a party can admit or deny the request, object to it, or state in detail why it cannot truthfully admit or deny it. Fed. R. Civ. P 36(a)(4) & (5). To the extent that a party argues that certain statements are in fact true, but the opponent intransigently denies the request, "Fed. R. Civ. P. 37(c)(2) allows the plaintiffs to seek reimbursement of the expenses incurred in making proof of that fact" at the appropriate time. *Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 678 (D. Kan. 1999).

The Court has carefully reviewed each of the at-issue RFAs and Defendant's responses and objections thereto and finds neither good cause nor any other basis on which to compel any further or different response as to any of them. The Court DENIES Plaintiff's Motion regarding the at-issue RFAs in its entirety.

## G.    Motion for Sanctions

In his Motion for Sanctions, Plaintiff first requests that the Court rule on the underlying Motion to Compel (Doc. 52) (Doc. 66 at 1), which the Court has now done. Plaintiff next contends that Defendant has not supplemented her responses to his discovery requests during the pendency of the Motion even though an April 25, 2025 scheduling order (Doc. 64) "indirectly directed" her to do so. (Doc. 66 at 3.)  As a result, Plaintiff asks the Court to find that Defendant has engaged in "intentional, bad faith, and willful" discovery violations and to sanction her accordingly. (Doc. 66

at 4.) The Court's scheduling order, however, imposed no such obligation on Defendant and sanctions are not warranted for this reason.

Finally, because the Court grants Plaintiff's Motion to Compel in part and denies it in part and both sides' positions were substantially justified in part, the Court declines to apportion the reasonable expenses the parties incurred in relation to the Motion. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If [a motion to compel] is granted in part and denied in part, the court … *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added). The Court therefore DENIES Plaintiff's Motion for Sanctions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (Doc. 52) is GRANTED IN PART as set forth in this opinion. Defendant shall supplement her responses to Plaintiff's interrogatories, requests for production, and requests to admit consistent with this Order on or before **Tuesday, October 14, 2025**. In all other respects, the Court DENIES Plaintiff's Motion to Compel. The Court DENIES the "Motion to Compel Discovery and Court to Make Decisions on Docs 52, 59, 62." (Doc. 66.)

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE