**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**ALIU ALABI,**

**Plaintiffs,**

**v.** **Civ. No. 24-493 GJF/DLM**

**BROOKE ROLLINS, Secretary,**
**U.S. Department of Agriculture,**

**Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on cross-motions for summary judgment: Defendant's Motion for Summary Judgment [Dkt. No. 90], and Plaintiff's Motion for Summary Judgment [Dkt. No. 93]. The parties have filed their respective responses [Dkt. Nos. 102, 98] and replies [Dkt. Nos. 106, 104]. After reviewing the briefs, exhibits, and controlling law, the Court concludes that Defendant's motion should be granted and Plaintiff's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Plaintiff Aliu Alabi ("Alabi" or "Plaintiff") worked for the United States Department of Agriculture ("USDA"), U.S. Forest Service, as a Human Resource Specialist. Plaintiff is black, Nigerian, and disabled. Jonna Anderson ("Anderson") served as Plaintiff's supervisor during the relevant time period, and Emily Bergener was his second-level supervisor. That year, Plaintiff filed two formal EEO complaints with the USDA's Employment Complaint Division stemming from four alleged instances of discrimination[1] against him. First, he asserted

[1] In his EEO complaint, Plaintiff alleged discrimination based on his race, color, national origin, and disability. He also alleged unlawful retaliation. Plaintiff contends that his EEO complaint also asserted discrimination based on his age and sex. Doc. 102 at 2, ¶ 4. Whether that is true, however, is irrelevant because Plaintiff did not allege sex discrimination in his First Amended Complaint in this lawsuit. Furthermore, his First Amended Complaint makes

that management gave him an unsatisfactory rating on his Fiscal Year 2019 Performance Appraisal. Second, he alleged that beginning sometime in 2014 and continuing to the present, management reduced and limited his opportunities for promotion. Third, in November 2018, Plaintiff was not selected for the position of Human Resources Specialist (Recruitment and Replacement) ("R and R position"), a decision he contends stemmed from unlawful discrimination. Fourth, in September 2019, Plaintiff was not selected for the position of Human Resources Specialist (Policy ("Policy position"). After the parties filed dispositive motions, the Administrative Law Judge ("ALJ") granted summary judgment in favor of the USDA. Plaintiff appealed to the Office of Federal Operations ("OFO"), but the OFO affirmed the ALJ's decision. Plaintiff filed a motion to reconsider, which the OFO denied.

On May 20, 2024, Plaintiff filed his initial Complaint in this case, followed two days later by his First Amended Complaint [Dkt. No. 5]. Plaintiff asserts claims for retaliation (Count 1) based on his 2019 performance appraisal; reduction of his opportunities for promotion within his series as Human Resources Specialist (Count 2); failure to promote (Counts 3 and 4); and discrimination based on race (Count 5), national origin (Count 6), and disability (Count 7).[2] Plaintiff brings his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e2(a)(1) (prohibiting discrimination and retaliation based on race, color, and national origin) and under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. (prohibiting disability discrimination against federal employees).

---

only a passing mention of age discrimination but never makes any supporting allegations. Dkt. No. 5 at 1, ¶ 2. Accordingly, claims of age and sex discrimination are not before this Court.

[2] The Court interprets the Amended Complaint such that Counts 2, 3, and 4 are the alleged adverse employment actions that stemmed from the discrimination alleged in Counts 5, 6, and 7.

Plaintiff has sued his employer before in this Court. On October 4, 2018, Plaintiff filed a civil rights complaint alleging retaliation and discrimination based on race, color, national origin, and disability. *Alabi v. Perdue*, No. 1:18cv931 RB/LF ("*Alabi I*"). On June 5, 2020, the Court entered summary judgment in favor of the Defendant and dismissed *Alabi I* with prejudice. On June 2, 2021, Plaintiff filed his Complaint in *Alabi v. Vilsack*, No. 1:21cv510 WJ/KK ("*Alabi II*"). In his Amended Complaint [Dkt. No. 7] in that case, Plaintiff again asserted claims of discrimination (race, national origin, and disability), failure to promote, and retaliation based his receipt of "Fully Successful" performance evaluations and other employer actions ranging from 2012 to 2015. The *Alabi II* court found that Plaintiff alleged some of the same facts in *Alabi II* that he had alleged in *Alabi I*, and that the new facts he alleged were part of the same series of transactions that included the facts in *Alabi I*. Accordingly, the *Alabi II* court concluded that Plaintiff's claims in *Alabi II* should have been brought in *Alabi I* and therefore were barred by res judicata.

## **LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. The nonmovant must then bring forth "specific facts showing a genuine issue for trial." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quotation marks omitted). "We view the evidence and the reasonable inferences to be drawn from the

evidence in the light most favorable to the nonmoving party." *Flores v. Henderson*, 101 F.4th 1185, 1192 (10th Cir. 2024) (internal quotation marks omitted).

When both parties move for summary judgment, a court must analyze each motion individually and on its own merits. *See Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). When the parties file cross motions for summary judgment, a court may assume that no evidence needs to be considered other than that filed by the parties. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). The existence of a genuine issue of material fact, however, precludes granting summary judgment. *Id.*; *Buell Cabinet*, 608 F.2d at 433.

## UNDISPUTED MATERIAL FACTS

### I. Plaintiff's Ratings and Unsuccessful Job Application Before 2019

The Performance Appraisal system used by Defendant has five possible overall ratings: Outstanding, Superior, Fully Successful, Minimally Satisfactory, and Unacceptable. Dkt. No. 90-3. Plaintiff's Performance Appraisals for FY2015, FY2016, and FY2018 were "Fully Successful." Plaintiff's Performance Appraisal for FY2017 was "Superior." Anderson Decl., Dkt. No. 90-1 at ¶ 16.

On or about August 31, 2018, Defendant issued a Vacancy Announcement (Announcement) seeking applicants to fill vacant Lead Human Resource Specialist, GS-12, positions in New Mexico, Colorado, Idaho, Montana, and Utah. Vacancy Announcement, Dkt. No. 90-14. The Announcement described the responsibilities of the position as, among other things, leading "a multifunctional team of Human Resource Specialists and Human Resource Assistants performing internal/external recruitment and placement." *Id.* at 2. The positions were temporary, not to exceed one year, with the possibility of extending four more years. *Id.* Plaintiff applied for

the position in New Mexico. Management referred seven qualified candidates, including Plaintiff, for further consideration. Affidavit of Somsakul Birdsong, Dkt. No. 90-15, ¶¶ 36-37. Melissa Dittmann, Human Resource Officer from Ogden, Utah, was the selecting official for the position. Dittmann Aff., Dkt. No. 90-16 at ¶ 19. Dittmann reviewed the applications, *id*. at ¶ 22, and convened a two-person panel to interview the referred candidates. Dittmann appointed herself and Bonnie Offutt, HR Supervisor, to the panel. *Id*. at ¶¶ 29-31. The interviews were conducted by telephone. Affidavit of Bonnie Offutt, Dkt. No. 90-17 at ¶ 34. Each interview was scheduled for forty-five minutes. Melissa Dittmann Answers to Interrogatory No. 8, Dkt. No. 90-18, p. 5. Dittmann and Offutt interviewed Plaintiff. *Id*. They asked each candidate the same set of questions.[3] Dkt. No. 90-17 at ¶ 22, 34.

After the interviews concluded, Dittmann and Offutt discussed among themselves each candidate's interview performance, reviewed candidate resumes, considered the needs of the HR Service team, and ranked the top three candidates in the following order: Lisa Salazar; Jessica Varela, and Lori Ruiz-Pohl. Dittmann Answers to Interrogatories, Dkt. No. 90-18. Melissa Dittmann selected Lisa Salazar for the position and identified Jessica Varela as her second choice for the position. Dkt. No. 90-16 at ¶ 39, 48. Assistant Director Erica Nieto approved Ms. Dittmann's selection. *Id*., ¶ 20-21.

Sometime in 2018, Jonna Anderson (Plaintiff's supervisor) nominated Plaintiff (at his request) for an Agency customer service award for a spreadsheet he created to document job applicants' qualifications. Plaintiff did not ultimately win the award. Anderson Aff., Dkt. No. 90-6 at ¶ 49-51.

[3] As Plaintiff points out, Defendant did not provide Dittmann's and Offutt's notes for Lisa Salazar's responses to Questions 6-10, so there is no documentary record of her response to those questions. In light of the lack of contradictory evidence, however, the Court assumes for summary judgment purposes that all candidates were asked the same questions.

## II. Plaintiff's Unsuccessful Application for Promotion in 2019

In June 2019, the Forest Service issued a Vacancy Announcement seeking applicants to fill two vacant HR Specialist (Policy), GS-12, positions in Albuquerque, New Mexico. Vacancy Announcement, Dkt. No. 90-19. Plaintiff applied. *See* Amended Complaint, Dkt. No. 5, ¶ 204. Laura Medina, GS-14 Supervisory Human Resources Specialist, was the Recommending Official for the positions. She submitted her recommendation to Assistant Director Elizabeth Feutrier. Medina Affidavit, Dkt. No. 90-20, ¶ 19. After the Announcement closed, the Forest Service's Human Resource Department generated a referral list identifying Plaintiff and other qualified candidates for the positions. Supplemental Affidavit of Laura Medina, Dkt. No. 90-21, ¶4. After reviewing the referral list, Ms. Medina assigned three staff members to review the applications to identify ten applicants for interviews based on a comparison of the thirteen job responsibilities listed in the Announcement and the accomplishments described in each applicant's resume. *Id*., ¶ 4. The staff identified eleven candidates for interviews, including Plaintiff. *Id*.

Ms. Medina convened a three-person panel to interview the top eleven candidates. Medina Affidavit, Dkt. No. 90-20, ¶¶ 21-22. Ms. Medina appointed Lisa Swenka, Human Resource (HR) Specialist, Patrick Petracca, Supervisory HR Specialist, and John Freeman, Supervisory Branch Chief, to act as panelists. *Id*. The panel interviewed the eleven candidates in person over a period of two days, August 7-8, 2019. Declaration of Lisa Swenka, Dkt. No. 90-22, ¶ 26. They interviewed Plaintiff on August 8, 2019. Medina Affidavit, Dkt. No. 90-20, ¶ 28. The panelists asked each candidate an identical set of five pre-selected questions and each separately scored the

candidates' responses on a scale of 0 to 3.[4] Swenka Affidavit, Dkt. No. 90-22, ¶ 26; HR Management Interview Question Form, Dkt. No. 90-23. Plaintiff was the only applicant whose resume indicated he had previously worked in a policy unit. Dkt. No. 2 at 88, ¶ 20. As Medina understood it, Plaintiff had rotated through the policy unit as an intern to get exposure to various HR functions and worked there as a trainee. Dkt. No. 90-20 at 8; Dkt. No. 90-24 at 1. Based on Plaintiff's responses to interview questions, his combined score from all three panelists was 19. Medina's Response to Complainant's Request for Interrogatories, Dkt. No. 90-24, p. 1. On the other hand, Jennifer Robinson's combined score was 45, and Mario Gonzales received a combined score of 40. *Id*. The panel therefore recommended Jennifer Robinson and Mario Gonzales to fill the vacant positions. Medina Affidavit, Dkt. No. 90-20, ¶ 24. Ms. Medina reviewed the interview notes and applications packages for each candidate, and she conducted reference checks. Dkt. No. 90-24 at p. 1. Although she does not remember the specific reference checks, she does recall that none were negative. *Id*. at p. 2. Then, Medina also recommended Jennifer Robinson and Mario Gonzales for the vacant positions. *Id*.; Dkt. No. 90-20 at ¶ 19. Medina submitted her recommendations to Elizabeth Feutrier, who then obtained approval from HR Director Mark Green. *Id*., ¶ 19.

**III. Plaintiff's 2019 Performance Appraisal**

On September 6, 2019, Anderson emailed her supervisees (including Plaintiff) requesting that they provide her with a list of accomplishments to assist in the preparation of their final FY2019 performance ratings. Anderson Declaration, Dkt. No. 90-1, ¶ 3. She instructed her team to review their supplemental goals, expectations, and measures, before listing their

[4] Plaintiff disputes the facts relating to the scoring process used by the panel but acknowledges he "was not privy to know what transpired." Dkt. No. 102 at 3. He also alleges that his "EEO complaints came up during the interview," but he cites no evidence to support that assertion. *Id*.

accomplishments. *Id*. In addition, Ms. Anderson asked them to provide information as to what specific measures were met by those accomplishments. *Id*. All team members responded to her on or before September 16, 2019.[5] *Id*. Defendant cannot produce the lists of accomplishments provided by employees other than Plaintiff, stating that they are no longer in its possession.

On September 9, 2019, Plaintiff filed a discrimination complaint against three supervisors: Laura Medina, Jonna Anderson, and Emily Bergener. *See* Dkt. No. 52 at 100, ¶ 5.[6] Plaintiff had filed previous EEO complaints against Anderson in 2015, 2016, 2017, and 2018. In 2019, both Anderson and Bergener participated in responding to one or more of those earlier complaints.

On October 23, 2019, Anderson issued Plaintiff his Performance Appraisal for the period October 1, 2018, through September 30, 2019. Dkt. No. 90-3. Anderson was the Rating Official for the appraisal, and Bergener was the Reviewer. Dkt. No. 90-1, ¶ 5. The criteria for Plaintiff's Performance Appraisal, like those of his peers, took the form of a matrix that addressed three main performance "Elements": (1) Mission Result-Oriented (critical); (2) Managing Work Assignments (critical); and (3) Teamwork and Partnerships (non-critical). Dkt. No. 90-3. Within each of these Elements were various "items" upon which employees were measured as either "does not meet fully successful," "meets fully successful" or "exceeds fully successful." Dkt. No. 90-2. Those numbers of the items within each Element were then put into a matrix on the Performance Appraisal form to help calculate the performance rating. *See* Dkt. No. 90-3. The Performance Appraisal allowed for five possible overall ratings: Outstanding, Superior, Fully Successful, Minimally Satisfactory, and Unacceptable. *Id*.

---

[5] Plaintiff disputes that all team members responded to Anderson by that date, but he comes forward with no evidence to contradict Anderson's Declaration on this point.

[6] Despite having admitted that Plaintiff filed a discrimination complaint on September 9, 2019, Defendant does not acknowledge that complaint in its brief in support of its motion for summary judgment. Plaintiff raised the issue in his response, Dkt. No. 102 at 11, but Defendant failed to address it in its reply.

After reviewing Plaintiff's list of achievements and considering his performance throughout the year, Anderson concluded Plaintiff produced results beyond what was expected for Element 1 (Mission Results Oriented) for items 2, 4, 6, and 8, resulting in a "Meets Fully Successful" rating on that Element. Dkt. No. 90-1 at ¶ 6. According to Anderson, Plaintiff did not receive an "Exceeds" rating for Element 1 because he did not satisfy a majority of the nine items needed under the "Exceeds" criteria in the Performance Plan. *Id*. She concluded Plaintiff produced results exceeding expectations for Element 2 (Managing Work Assignments), resulting in an "Exceeds Fully Successful" rating on that element; and she concluded he produced results warranting a "Fully Successful" rating for Element 3 (Teamwork and Partnerships). Dkt. No. 90-1, ¶ 6. The numbers on the grid were added and calculated according to a formula on the Performance Appraisal form; application of the formula resulted in Plaintiff's performance rating. Dkt. No. 90-3. As a result of the foregoing, Anderson assigned Plaintiff an overall rating of "Fully Successful." *Id*. There is no evidence in the record that other employees were assessed under a different framework.

On October 23, 2019, Plaintiff e-mailed Anderson seeking additional credit for Element 1, item 5 or for Element 3, items 4 and 6 on his Performance Appraisal based on his belief that his performance warranted a "Superior" rating. Anderson Declaration, Dkt. No. 90-1, ¶ 9 and Dkt. No. 90-4. Anderson e-mailed Plaintiff denying his request for additional credit and explaining her reasons for doing so. Dkt. No. 90-1, ¶ 10 and Dkt. No. 90-5. She stated, "From all the emails that you have shared with me I have not found where you provided input or drafted a proposed solution or made a process more efficient." Anderson email to Plaintiff, Dkt. No. 90-5. Anderson responded in similar fashion to the other elements of Plaintiff's performance rating that he asked her to

reconsider, concluding that the information he shared with her did not meet the criteria for those elements of his evaluation. *Compare* Dkt No. 90-4 *with* Dkt. No. 90-5.

On October 31, 2019, Plaintiff e-mailed Bergener requesting reconsideration of his performance rating. Bergener Declaration, Dkt. No. 90-10, ¶ 4, and Dkt. No. 90-11. Bergener spoke to Plaintiff about his rating and concluded that Plaintiff met the "exceeds" criteria for Element 1, items 4, 5, and 6. Dkt. No. 90-10, ¶ 6, and Dkt. No. 90-12. Bergener concluded, however, that Plaintiff did not meet the "exceeds" criteria for other elements of the evaluation, including Element 1, items 1, 2, 3, 7, 8, and 9. Bergener explained to Plaintiff how she reached that conclusion. Dkt. No. 90-10, ¶ 7 and Dkt. No. 90-12. For example, the criteria for item 1 under Element 1 is "Conducts in-depth research into statutes, laws, regulations, policies, handbooks, and/or court cases. Composes and shares documents with the Team, such as white papers, that support findings of the research." Doc. 90-12 at 1. In finding that Plaintiff did not meet this criteria, Bergener wrote, "I have not seen you share any document with the Team that supports findings of conducting in-depth research." *Id*. In finding that Plaintiff did not meet item 3 under Element 1, Bergener noted the criteria was "Takes the initiative to mentor less seasoned HR employees or external customers, including providing accurate, sound, and logical advice." *Id*. In concluding that Plaintiff did not satisfy this item, Bergener wrote, "I have not seen any initiative to mentor less seasoned HR employees or external customers." *Id*. Bergener found that Plaintiff did not satisfy items 2, 7, 8, and 9 of Element 1 for similar nondiscriminatory reasons. Dkt. No. 90-12 at 1-2. After Bergener gave Plaintiff additional credit for Element 1, items 4, 5, and 6 but also took away credit for items 2 and 8, he was left with an "exceeds rating" of just three items under Element 1. According to the evaluation formula, this did not change Plaintiff's overall rating of "Fully Successful." Dkt. No. 90-10, ¶ 8.

**IV. Promotions in 2020 or Later**

Plaintiff points to six fellow staffing specialists—Jessica Varela, Solsakul Birdsong, Kym Parsons, Christopher Huntsman, Leandro Ortiz, and Elizabeth Walters—all of whom were rated either "Superior" or "Outstanding" in their 2019 Performance Evaluations, when they (like Plaintiff) were classified as GS-11. All of them promoted to GS-12 in 2020. *See* Am. Cmplt., Dkt. No. 5 at ¶ 65-71 and Answer, Dkt. No. 10 at ¶ 65-71.

On June 5, 2022, Plaintiff was promoted to Lead Human Resource Specialist, GS-12, and stationed at the Albuquerque Service Center. Bergener Declaration, Dkt. No. 90-10, ¶ 13. Emily Bergener effected the promotion. Dkt. No. 90-13. Plaintiff has not come forward with evidence of any disparaging remarks made by any supervisor or other overt discrimination regarding his race, color, national origin, or disability.

**DISCUSSION**

**I. Applicable Law**

Because this case involves no *direct* evidence of retaliation or failure to promote based on race, gender, national origin (Nigerian), or disability, the Court must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (internal quotation marks omitted). That framework begins with Plaintiff establishing a prima facie case of retaliation or discrimination based on protected status. Only after the prima facie case is established by a plaintiff does the burden then shift to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). This burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Once a legitimate reason is given, the burden

shifts "back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual, i.e., unworthy of belief." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). "If the plaintiff cannot satisfy the pretext step of this burden-shifting framework, the employer is entitled to summary judgment 'even though [the] plaintiff has established a prima facie case' of retaliation" or discrimination. *Payan v. United Parcel Serv.*, 792 F. App'x 634, 636-37 (10th Cir. 2019) (quoting *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1397 (10th Cir. 1997)).

## II. <u>Count 1</u>

Plaintiff asserts that Defendant retaliated for his September 9, 2019, EEO discrimination complaint by giving him a poor performance appraisal later that year. Plaintiff's claim for retaliation is based on his 2019 performance rating of "Fully Successful." Dkt. No. 5 at 7. Defendant moves for summary judgment on this claim on three grounds. First, it argues that the performance rating was not a materially adverse action. Second, it asserts that there is no causal connection between the performance rating and Plaintiff's protected conduct to support an inference of retaliatory motive. Third, it contends that it has a legitimate business explanation for Plaintiff's "Fully Successful" rating. Plaintiff disputes each of these arguments.

The Court agrees with Defendant that Plaintiff's 2019 performance review is not a materially adverse action, and therefore he does not satisfy his burden to make a prima facie case. In the alternative, the Court finds that Plaintiff has not come forward with sufficient evidence to show that Defendant's proffered non-discriminatory reasons for the rating are mere pretext for discrimination. For both reasons, Defendant is entitled to summary judgment on Count 1.

### A. Prima Facie Case

To make out a prima facie case of retaliation under Title VII, Plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1051 (10th Cir. 2011) (quoting *Proctor v. UPS*, 502 F.3d 1200, 1208 (10th Cir. 2007)). Defendant does not dispute that Plaintiff's September 9, 2019, complaint of discrimination qualifies as protected opposition to discrimination. Accordingly, the Court moves on to the other elements of Plaintiff's prima facie case, but concludes that Plaintiff failed to show that his 2019 performance review was a materially adverse action.

#### 1. Materially Adverse Action

A materially adverse action for purposes of a Title VII retaliation claim is one "that causes a significant change in employment status or benefits." *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021). In retaliation cases, a plaintiff must show that the retaliatory action caused a "significant" harm, i.e. the employer took action serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination. *Muldrow v. City of St. Louis, MO*, 601 U.S. 346, 357-58 (2024). *See also Brown*, 13 F.4th at 1090. *Muldrow* distinguished this standard from a Title VII discrimination claim, where the plaintiff need not show that the adverse action was significant, serious, substantial, or any other adjective suggesting a heightened bar. *Muldrow*, 601 U.S. at 357-58

Defendant argues that a "Fully Successful" performance rating, which is the middle tier of five possible ratings, does not constitute a materially adverse action, citing cases from within the Tenth Circuit. In response, Plaintiff argues that his rating made him ineligible for promotions and

awards, including monetary compensation. He points to six other GS-11 employees who were rated either "Superior" or "Outstanding" in their 2019 Performance Evaluations, and then subsequently promoted to GS-12 in 2020 while Plaintiff stayed at GS-11 despite having been at that grade longer than the others. *See* Am. Cmplt., Dkt. No. 5 at ¶ 65-71 and Answer, Dkt. No. 10 at ¶ 65-71.

Defendant cites cases from this circuit in support of its argument that as a matter of law a "Fully Successful" rating is not a materially adverse action. For example, the court in *Brenna v. Salazar*, No. 08-CV-01696-LTB-CBS, 2010 WL 582357 at *12 (D. Colo. Feb. 17, 2010), concluded that the performance rating was not materially adverse because the plaintiff presented "no evidence that this rating resulted in any negative consequences to her compensation or affected her job responsibilities," and in absence of such evidence the rating was merely a "petty slight." *Id*. Similarly, the plaintiffs in *Maxwell v. Whitley*, 553 F. Supp. 3d 927, 939 (D.N.M. 2021) and *Paige v. Donovan*, No 09-CV-01811-WJM-CBS, 2011 WL 5520291 at *14 (D. Colo. Aug. 1, 2011), also failed to come forward with such evidence of negative consequence beyond the loss of potential bonus share, which courts have generally treated as uncertain and not the basis of a materially adverse action.

On the other hand, the Tenth Circuit has held that a negative[7] performance evaluation can amount to an adverse employment action in certain circumstances. *Toth v. Gates Rubber Co*., No. 99-1017, 2000 WL 796068, at *9 (10th Cir. June 21, 2000). But typically, this occurs only when the negative performance evaluation later leads to a materially adverse employment action such as termination or a failure to promote. *Toth*, 2000 WL 796068, at *9 (concluding plaintiff "suffered

[7] It would be a stretch to construe Plaintiff's 2019 evaluation as "negative," when it is called "fully successful." After all, such a rating falls squarely in the middle of a range of ratings and is consistent with most of Plaintiff's prior evaluations.

an adverse employment action when she received the negative performance evaluations" because her "ultimate discharge was based on the negative performance evaluations"); *see also MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (concluding that plaintiff's "'below expectations' job performance rating and her one-day suspension" were adverse employment actions (emphasis added)), abrogated on other grounds by *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018).

Plaintiff here has come forward with undisputed evidence that six other GS-11 staffing specialists who were rated either "Superior" or "Outstanding" in 2019 had been promoted to GS-12 by 2020, whereas he had not despite being at the GS-11 level the longest. But he has not shown that he lost any promotion to anyone, including any of the six comparators, because of his 2019 evaluation. Plaintiff also has not proffered any admissible evidence to show that his 2019 employment rating delayed or otherwise affected his ability to promote to GS-12. The most Plaintiff can do here is speculate, but a genuine issue of material fact cannot be based on speculation. Accordingly, the record lacks evidence from which a jury might conclude that Plaintiff's mid-range rating had impacted his chances at promotion to GS-12, which would dissuade a reasonable worker from making or supporting a charge of discrimination. Therefore, the Court finds that Plaintiff has failed to meet the prima facie requirement to show that his 2019 performance rating was a materially adverse employment action.

**2. Causal Connection**

A plaintiff may show a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Unless close temporal proximity exists between the protected activity and the retaliatory conduct, a plaintiff must offer

additional evidence to establish causation. *O'Neal v. Ferguson Constr. Co*., 237 F.3d 1248, 1253 (10th Cir. 2001). Generally, "if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013).

Defendant argues that there is no causal connection between Plaintiff's protected EEO activity and his 2019 performance rating of "Fully Successful." Defendant has admitted, however, that Plaintiff filed a Complaint against Laura Medina, Jonna Anderson, and Emily Bergener on September 9, 2019, and that Anderson issued Plaintiff's "Fully Successful" performance rating on October 23, 2019—almost exactly one and a half months later. Under *Conroy*, this short interval is sufficient to support at least an inference of causal connection.

**B. Legitimate Business Explanation**

Under *McDonnell Douglas*, the burden now shifts to Defendant to set forth a legitimate, non-discriminatory reason for the "Fully Successful" performance rating it gave Plaintiff in 2019. As described in great detail in Section III of the Undisputed Material Facts, *supra*, Defendant has met its burden of production on this element under *Reeves*, 530 U.S. 133 (2000). Both Anderson and Bergener have come forward with a legitimate and non-discriminatory business explanation for Plaintiff's performance rating.

**C. Pretext**

With Defendant having sufficiently shown a legitimate, non-discriminatory reason for the performance rating, the burden shifts once more back to Plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual. In other words, Plaintiff must come forward with evidence to show that the proffered reasons for his performance rating are but a cover for discrimination against him.

Plaintiff makes several arguments in attempting to show pretext. First, he cites to a discrepancy between how Defendant characterized the credit given to Varela and Birdsong regarding Element 1 of their performance reviews. Dkt. No. 102 at 12. The discrepancy arises from a difference between Anderson's discovery responses in the EEOC proceeding and how she answered interrogatories in this case. Defendant admits the contradiction, calling it an "oversight." Dkt. No. 98 at 3.

Second, Plaintiff argues that Defendant did not follow its own procedures requiring employees to submit their accomplishments before a performance review. Although Anderson swore, Dkt. No. 90-1 at ¶ 3, that she asked all her direct reports to email her their accomplishments for the prior year for purposes of their performance reviews, Plaintiff argues that he was the only one who actually did so. Despite the fact that Anderson testified that she received all employees' accomplishments and considered them, Plaintiff asserts (in so many words) that this is a lie. He offers no affirmative evidence of this but rather bases his argument on the fact that Defendant has not produced the emails listing accomplishments submitted by the other employees under Anderson's supervision. According to Plaintiff, Defendant's inability to produce those documents shows that Defendant's reasons for his performance rating are pretext for discrimination. Although he does not say so explicitly, Plaintiff appears to suggest that the absence of these documents means that Defendant cannot justify to him or to the Court the performance ratings it gave to Plaintiff's colleagues. Plaintiff extrapolates and speculates that "none of the six comparators deserve credits for measures #: 1,2, 3, 5, 7, 8, and 9 of exceeds element 1." Dkt. No. 102 at 14. Defendant, on the other hand, argues that the other employees did submit their accomplishments, but years later Defendant is simply no longer in possession of the emails.

Plaintiff's third argument is the only one that relates directly to his own performance review. He argues that when she first issued his evaluation, Anderson gave Plaintiff credit only for items 2, 4, 6, and 8 of Element 1, but that after he asked her to reconsider, she also gave him credit for item 5. Dkt. No. 102 at 15. Plaintiff argues that receiving credit on 5 out of 9 measures in Element 1 should have yielded a rating of superior or outstanding, rather than the "fully successful" rating he actually received. Plaintiff's argument ignores the fact that while in her reconsideration of Anderson's initial evaluation, Bergener did credit Plaintiff for item 5, she also *removed* credit for items 2 and 8. As a result, under the final tally Plaintiff received credit only for three items (4,5, and 6) under Element 1, which is consistent with the "Fully Successful" rating he received. Therefore, this argument lacks merit.

In the end, the Court is left to consider whether the discrepancy between Defendant's discovery responses in the EEOC proceeding and in this case, taken together with Defendant's failure to produce other employees' emails to Anderson regarding their own accomplishments, is enough to show that Defendant's explanation for Plaintiff's 2019 performance evaluation is mere pretext for discrimination based on race, color, national origin, or disability. The Court concludes that it is not. These circumstances tend to show carelessness and human error, along with loss of emailed documents due to the passage of time. But the evidence does not connect Defendant's failures to a discriminatory motive. Accordingly, the Court concludes that Plaintiff has failed to meet his burden to demonstrate pretext.

Because Plaintiff failed to satisfy every element of a prima facie case of retaliation and did not bring sufficient evidence of pretext, Defendant's motion for summary judgment on Count 1 will be granted.

## III. Claim for Failure to Promote (Discrimination)

### A. Count 2

Defendant contends that claim preclusion bars Plaintiff's Count 2 claim because it alleges facts and raises issues that could have been included in Plaintiff's 2018 complaint in *Alabi I*. In the alternative, Defendant contends that Plaintiff failed to exhaust administrative remedies for Count 2. Plaintiff does not respond to either argument.

#### 1. Res Judicata

"The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 847 F.3d 1221, 1239 (10th Cir. 2017) (brackets and internal quotation marks omitted). Claim preclusion has three elements: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id*. If all three elements are met, claim preclusion is appropriate, "unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in a prior suit." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (quoting *Yapp v. Excel Corp*., 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

The Court concurs with Defendant that claim preclusion bars Plaintiff's claims in Count 2 to the extent that count relies on events that occurred before October 22, 2018, the date on which Plaintiff filed his Amended Complaint in *Alabi I*.[8] Each of the requisite elements of claim preclusion is satisfied here. First, there was a final judgment on the merits in *Alabi I*. Second, the parties in this case and *Alabi I* are identical. And third, as explained below, the cause of action is the same in both cases.

[8] The sole exception to this is Plaintiff's performance appraisal for 2019, which had not yet been issued at the time he filed *Alabi I*, so it could not have been included in the Amended Complaint in that case.

In Count 2 of his First Amended Complaint in this case, Plaintiff alleges that Defendant has "reduced and limited [his] opportunities for promotion within his series as a Human Resources Specialist." Dkt. No. 5 at 14. He alleges that, from 2014 until 2019, Anderson and Bergener issued him low performance ratings, denied him temporary promotions, and suppressed accomplishments, which resulted in a reduction of his employment opportunities. Each of those actions is related to the acts Plaintiff complained of in *Alabi I*. In that case, Plaintiff alleged acts of discrimination and retaliation (including retaliation in the form of a low performance evaluation) from 2009 through 2013. Like the facts alleged in Count 2 here, all of the facts alleged in *Alabi I* occurred at Plaintiff's place of employment and allegedly occurred as a result of his race, national origin, and disability. The facts alleged in Count 2 of this case and in *Alabi I* form a logical trial unit because they would include all instances of discrimination that occurred before the *Alabi I* complaint was filed. Plaintiff could have, and should have, included the new facts in this case in his complaint in *Alabi I*. The Court concludes that with the exception of Plaintiff's 2019 performance appraisal, Count 2 is barred by the doctrine of res judicata.

**2. Failure to Exhaust Administrative Remedies**

Defendant argues that Count 2 should be dismissed in its entirety (including his failure to promote claim as it relates to the 2019 performance appraisal) for the alternative reason that Plaintiff did not exhaust his administrative remedies. It contends that because Plaintiff has alleged a series of discrete discriminatory acts, such as issuance of poor performance appraisals in 2015, 2016, and 2019, denying him temporary promotions, and suppressing his accomplishments, he needed to exhaust administrative remedies for each. Defendant relies on *National R.R. Pass. Corp. v. Morgan*, 536 U.S. 101 (2002), in which the Supreme Court held that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge

within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id*. at 110. "Each discrete discriminatory act starts a new clock for filing charges alleging that act," regardless of whether similar instances of discrimination have occurred in the past. *Id*. at 113. The continuing violation doctrine, which would permit the Court to consider the events alleged by Plaintiff in the aggregate, does not apply to claims of disparate treatment or retaliation. *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003).

Defendant asserts that Plaintiff failed to timely exhaust his administrative remedies for any of the discrete acts of discrimination or retaliation alleged in Count 2. Plaintiff does not come forward with evidence of exhaustion or respond to this argument in any fashion. Accordingly, the Court concludes that Defendant is entitled to summary judgment on Count 2 for the alternative reason that Plaintiff failed to exhaust his administrative remedies.

**B. Count 3**

In Count 3, Plaintiff alleges that Defendant discriminated and retaliated against him by not selecting him for either of two HR Specialist (Policy), GS-12, positions that he applied for in 2019. Defendant argues that even if Plaintiff can make out a prima facie case of discrimination[9], he cannot show that its proffered legitimate, non-discriminatory reasons for not selecting him are mere pretext. Defendant's proffered reasons for its decision are set out in detail in Part II of the Undisputed Material Facts, *supra*. Defendant has met its burden of production. Accordingly, the Court turns to the question of whether Plaintiff has successfully shown pretext.

To show that the defendant's proffered race-neutral reasons were actually a pretext for discrimination, the Tenth Circuit has held that the plaintiff must demonstrate that the defendant's

[9] Defendant does not address the prima facie case for discrimination but rather appears to assume, at least for purposes of its motion for summary judgment, that Plaintiff can make the prima facie case. Therefore, the Court assumes the same.

"proffered [race-neutral] reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citing *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004)). However, a plaintiff's "mere conjecture that [his] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co*., 853 F.2d 768, 772 (10th Cir. 1988). Plaintiff offers a variety of reasons to support his belief that Defendant's reasons for not selecting him are pretextual. These can be grouped together for ease of reference.

First, Plaintiff points to alleged deficits in the selection procedure. He claims that Defendant "admitted" that the interview questions were not policy or job related." Dkt. No. 102 at 19. His citation for that assertion, however, is not an admission by Defendant but merely an allegation that he made in his Amended Complaint. He also argues that Medina made her selections for the job on August 8, 2019, before she received the selection notes from the interview panel on August 9, 2019. A review of the evidence cited by Plaintiff shows that the latter date was based on Medina's recollection, in which she stated she believed she received the notes on "approximately" August 9, 2019. Dkt. No. 5 at 54. This is not the smoking gun Plaintiff seems to think; indeed, he has not explained how this one-day discrepancy in dates shows discrimination against him. Plaintiff also asserts that the interview panel asked him questions about his prior EEO complaints, but again cites no evidence to that effect. He also asserts that his EEO complaints against his employer, which based on the record before the Court appear to be numerous, were "known throughout the Agency" and that *he was scored low in the interview as a result*. Dkt. No. 102 at 19 (emphasis added). Again, Plaintiff is speculating as to the cause-and-effect relationship—he does not cite evidence to support this allegation.

Second, Plaintiff compares his qualifications and experience with those of the people selected for the job, and he finds his superior to theirs. He states that the individuals selected for the job did not have policy-related experience, but that he had "overwhelming" policy experience. Dkt. No. 102 at 18. But Plaintiff omits that his prior policy-related experience was as a trainee whose work required review by another employee. Dkt. No. 2 at 37; Dkt. No. 36 at 62-63. He also points to his educational achievements and employer recognitions, which he believes outstrip Gonzales' educational background and achievements at work. A plaintiff's own opinions about his qualifications, however, do not give rise to a material fact dispute because the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *Bullington v. United Air Lines, Inc*., 186 F.3d 1301, 1318 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Pass. Corp v. Morgan*, 536 U.S. 101 (2002).

Third, Plaintiff accuses Medina of perjury and argues that she is an unreliable witness. Dkt. No. 102 at 20. He bases this on the contrast between Medina's statement that she "was not a part of the policy branch and hand [sic] no involvement in the instances that took place in 2014 and 2015" (where Plaintiff was not promoted) with Defendant's response of "Admit" to two of Plaintiff's requests for admission. Those requests were: "Admit that Complainant applied to Ms. Medina [sic] position of GS-201-12 HR Specialist 120 Day Detail/Temporary Promotion in [sic] June 24, 2014," and "Admit that Complainant applied to outreach on June 10, 2015 and announcement of Ms. Medina's position of human resources specialist GS-0201-12/13 Policy Branch." Dkt. No. 102 at 20; Dkt. No. 2 at 86, ¶ 10-11; Dkt. No. 39 at 21, ¶ 45. As far as the allegation of perjury goes, the Court notes that it was not Medina who signed the requests for admission that Plaintiff cites, so Medina has not made conflicting sworn statements. It is also true

that each of those requests for admission contained a lot of information, and it is possible that the Defendant was admitting that Plaintiff applied for those jobs on those dates and not necessarily focusing on the manager involved. In any event, it is unclear to the Court how this contradiction shows that Plaintiff was not hired because of his race, color, national origin, or disability. The evidence shows that three other employees conducted interviews, rated the interviewees on their answers, and ultimately rated Plaintiff significantly below Robinson and Gonzales. The panelists then recommended those two individuals for the positions, and Medina in turn made the same recommendation to her supervisor, who in turn sent it up the chain of command. According to the evidence, the hiring decision did not rest solely with Medina, and there is no evidence that any of the three panelists acted with discriminatory bias.

Plaintiff's final argument regarding pretext is that Defendant committed intentional spoliation of evidence by not retaining documents relating to the reference checks Medina conducted after the interview panel made its recommendations. Dkt. No. 102 at 20. Plaintiff points to the fact that Defendant admitted to having issued a litigation hold notice for his EEO complaint relating to this job, yet the documents are not available. *Id*. He claims that he was prejudiced by this failure to retain reference check documents, arguing, "Defendant admitted that Medina took into consideration what interview panel provided her, what was in the resumes, and reference checks to make selection recommendation." Dkt. No. 102 at 20. However, Plaintiff does not explain how or why the resume checks would have helped him to prove that Defendant's decision not to hire him stemmed from unlawful discrimination when the interview panel had already recommended others for the position, and Medina testified that the resume checks yielded nothing negative. Dkt. No. 90-24 at p.2.

In sum, Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of material fact regarding whether Defendant's legitimate, non-discriminatory reason for not hiring him is unworthy of belief.

**C. Count 4**

In Count 4, Plaintiff alleges that Defendant discriminated against him on November 20, 2018, when it informed him that he had not been selected for one of four Lead Human Resource Specialist, GS-12, positions that he applied for in August 2018.[10]

As with Count 3, Defendant argues that even if Plaintiff can make out a prima facie case of discrimination, he cannot show that its proffered legitimate, non-discriminatory reasons for not selecting him are mere pretext. Defendant's proffered reasons for its decision are set out in detail in Part I of the Undisputed Material Facts, *supra*. Defendant has met its burden of production. Once again, the Court turns to whether Plaintiff has brought forth enough evidence to show a genuine issue of material fact as to whether Defendant's reasons are not worthy of belief.

Plaintiff advances arguments similar to those he made with regard to Count 3. Plaintiff begins by arguing he "was accused wrongly" by Dittman in March 2018, that she was "unhappy" with him in August 2018, and that "Dittmann intentionally created chaotic environment for Plaintiff a month and a half before the interview." Dkt. No. 102 at 22. The Court has reviewed every document (all of which are emails) that Plaintiff cited in support of these allegations and concludes that none of them support his statements.

Next, he argues that Defendant failed to produce legible interview notes written by panelists Melissa Dittmann and Bonnie Offutt. Dkt. No. 102 at 22-23. The interview notes that

---

[10] For the first time in its reply brief, Defendant suggests that Plaintiff failed to exhaust administrative remedies for all discrete employment actions before 2019. Dkt. No. 106 at 8. This is a shift from its opening brief, when it argued that its exhaustion arguments were specific to Count 2. Because it was raised for the first time in a reply brief, the Court will not consider the exhaustion argument as to Count 4.

Defendant did produce are handwritten, and some of them are too faint to be legible, while other pages appear as though they have ink bleeding through from the reverse side. Dkt. No. 93 at 72-77. It is true that the notes are hard to read, but as those were the notes that were taken, Defendant was obligated only to produce copies, not to transcribe them. Plaintiff also points out that Defendant produced two pages of notes by each interviewer showing Plaintiff was asked ten questions in his interview. Dkt. No. 102 at 22-23. In contrast, Defendant produced only one page written by each interviewer for five questions (the same first five questions asked of Plaintiff) asked of Lisa Salazar, who ultimately won the position. *Id*. From this, Plaintiff appears to infer that Dittmann and Offutt asked Salazar fewer questions to put Plaintiff at a disadvantage. What Plaintiff does not show, and does not argue, is that out of all seven interviewees, he was the only one asked ten questions. For example, if only Black applicants were asked ten questions while all others were asked only five, that might tend to show racial bias. But that is not the showing that Plaintiff makes here. Plaintiff does not present enough information about the racial backgrounds and number of questions asked of the other five interviewees to show a pattern of bias that supports a finding of pretext.

In a related argument, Plaintiff also states that the lack of legible interview notes is the result of intentional spoliation of evidence by Defendant, which was under a litigation hold regarding Plaintiff's EEO complaint relating to this job. *Id*. at 23. Again, as with Count 3, Plaintiff has not explained what the interview notes contained that would have shown discrimination against him. Similarly, Plaintiff argues that Defendant failed to produce documents showing "how the applicants interview on Melissa Dithman [sic] position were ranked and rated or indicate the page number in ROI#:FS-2019-00308." *Id*. Confusingly, Plaintiff then cites to Dkt. No. 93 at 94-95, ¶

13. Examination of that document indicates that the Defendant *did* identify where Plaintiff could find Defendant's "Ratings and Ranking list of candidates" in its prior production.

Finally, Plaintiff again attempts to create a fact question on pretext by comparing his qualifications, professional accomplishments, and educational background with Salazar's. This argument fails for the same reasons it failed with respect to Count 3. The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999). As the Tenth Circuit has cautioned, the court "must proceed with caution when considering the relative merits of individual employees. The courts may not act as a super personnel department that second guesses employers' business judgments. Accordingly, minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext. To show pretext, the disparity in qualifications must be overwhelming." *Jaramillo v. Colo. Jud. Dept.*, 427 F.3d 1303, 1308-09 (10th Cir. 2005) (internal citations and quotations omitted). Again, the Court concludes that Plaintiff has failed to create a genuine issue of material fact that Defendant's legitimate, nondiscriminatory reasons for its hiring decision are mere pretext for unlawful discrimination.[11]

## IV. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment will be denied for the same reasons that Defendant's motion will be granted. Plaintiff has failed to show that there is no genuine issue of material fact and that he should be granted summary judgment as a matter of law on his claims of retaliation and discrimination. More particularly, he has failed to show that no reasonable juror

[11] The Court notes that Plaintiff's assertions of pretext focus on his race, color, and national origin. He does not make a concerted effort to show that Defendant's proffered reasons for its actions are pretext for disability discrimination.

could conclude that Defendant's proffered legitimate business reasons for its employment actions are worthy of belief.

Further, it is notable that Plaintiff makes no attempt in his motion to make a prima facie case of discrimination based on disability, which is foundational to a plaintiff's motion for summary judgment on that claim. A prima facie case of disparate treatment based on disability under the Rehabilitation Act is very similar to that under the ADA. A plaintiff must show "(1) that he is disabled within the meaning of the ADA [or Rehabilitation Act]; (2) that he is qualified for the job held or desired; and (3) that he was discriminated against because of his disability." *Lincoln v. BNSF Ry. Co*., 900 F.3d 1166, 1192 (10th Cir. 2018) (internal quotation marks omitted) (emphasis added). As with Title VII, a plaintiff alleging disparate treatment because of disability must show that he suffered an adverse employment action. *See Exby-Stolley v. Bd. of Cnty. Comm'rs of Weld Cnty*., 979 F.3d 784, 795 (10th Cir. 2020). As Defendant notes in its response, Dkt. No. 98 at 16-17, Plaintiff has made no attempt to show that he is disabled within the meaning of the Rehabilitation Act.

The Americans with Disabilities Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Rehabilitation Act provides the same definition of disability. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). "Whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Airlines, Inc*., 527 U.S. 471, 483 (1999), superseded by statute on other grounds, Pub. L. No. 110–325, § 2(a)(4), (5), & (6). The burden is on Plaintiff to "articulate with precision the impairment alleged and the major life activity affected by that impairment." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Plaintiff must prove his

disability "by offering evidence that the extent of the limitation in terms of [her] own experience ... is substantial." *Id*.

Plaintiff's motion for summary judgment lacks proof that he has substantially limiting impairments of one or more major life activity and that Defendant regarded him as having such an impairment. Plaintiff only addresses this in his reply after Defendant noted the omission of this argument and evidence in its response brief. The Court will not consider arguments raised for the first time in a reply. *See Zacarias-Garcia v. Garland*, 852 F. App'x 387, 388 (10th Cir. 2021) ("[T]his court ordinarily will not consider arguments raised for the first time in a reply brief.") (quotation omitted). Further, even if the Court were to consider Plaintiff's belated argument, he merely attaches medical records to his reply brief. He does not "articulate with precision" what his impairment is and the major life activity or activities affected by his impairment. Instead, Plaintiff appears to leave it to the Court to read his medical records and make its own inferences on these points. That is not the Court's burden, however, and it will not do so.

Therefore, the Court denies Plaintiff's motion for summary judgment for the additional reason that he has failed to make out a prima facie case of disability discrimination.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Dkt. No. 90] is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED** [Dkt. No. 93].

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***